CASE 4—EQUITY, MORTGAGE—JANUARY 15, 1884.

## Morris, &c., v. Murray, &c.

APPEAL FROM FRANKLIN CIRCUIT COURT.

1. Literal exactness in describing the title to be secured by a mortgage is not required;

2. It is sufficient if the description be correct, as far as it goes, and full enough to direct attention to the sources of full and correct information as to the character and amount to be secured.

3. But in this case the mortgage sets forth that B. is indebted to D. in a certain amount, to be credited by such an amount as D. might be owing to B. for brick, etc. It is insufficient as against a subsequent mortgage.

4. While the provisions of section 24, article 1, chapter 43, General Statutes, have not been expressly made to apply to mortgages, still

there is no reason why the description of the debt to be secured by mortgages should not be full enough to enable creditors and purchasers to discover the amount by reasonable diligence. .

JNO. & J. W. RODMAN, A. J. JAMES, AND W. P. D. BUSH, FOR APPELLANTS.

The description of the land in the mortgage to Dudley is amply sufficient

The description of the debt is sufficient, although the amount secured is unliquidated, yet the mortgage will not be vitiated. (Powell on Mortgages, vol. 1, 775; Jones on Mortgages, sec. 344.)

The mortgage is of itself a specialty, and it was for H. Blanton to assert his credits. (Powell on Mortgages, vol. 1, 775-6; *Ib.*, 213; Fulton v. Cook, 2 Md., 279; 1 Mon., 67; Sheras v. Cray, 7 Cranch, 408; 15 Michigan, 244; 4 Bibb, 288.

The mortgage to Dudley. and the re-affirmation of 1863 and 1869, gave a lien to the appellants to the extent of their debt and prior to appellee. (5 J. J. Mar , 558; Madeira v. Hopkins, 12 B. Mon., 601; 13 Bush, 591; 14 B. Mon., 224; 16 *Ib.*, 73; 6 *Ib.*, 75; 7 *Ib.*, 776; 4 Litt , 319.

D. W. LINDSAY, A. DUVALL, AND W. LINDSAY, FOR APPELLEE.

The description of the land is insufficient as against appellee.

The statement of the debt in the mortgage of 1846 is not sufficient to put creditors and purchasers on their guard.

The papers of 1863 and 1869 were not recordable instruments within the Statute. (Mueller v. English, 12 Bush, 445; Averill v. Guthrie, 8 Dana, 82; Beth v. Allen, 10 Bush, 40.)

The lapse of time creates the presumption of payment, and the fair conclusion from the evidence strengthens the presumption. (5 Dana, 525; 2 Duv., 271; 8 Bush, 591.)

JUDGE LEWIS DELIVERED THE OPINION OF THE COURT.

September, 1884, B. H. Blanton and Harrison Blanton gave their note to appellee for $4,000, and to secure the payment of it the latter executed to him, at the same time, a mortgage upon 100 acres of land.

Appellee brought this action to recover personal judgment on the note, and to enforce his lien on the land, to satisfy it. And appellants, children and grandchildren of Harrison Blanton, and of his wife, Betsy Blanton, deceased, having, upon their own motion, been made parties, filed an answer and cross-petition asserting a prior mortgage lien on the same land

for the payment of a debt for $8,166.42 and interest from 1846, which they allege one E. A. Dudley transferred to them as heirs of Betsy Blanton.

From the statement of the answer and exhibits filed and made parts of it the following facts appear:

In March, 1846, Harrison Blanton executed to Jeptha Dudley and others a mortgage upon the farm where he then resided and the tracts adjoining and connected with it, including the land mortgaged to appellee in 1874, and also other detached tracts and lots and personal property, for the purpose of securing debts he owed the other mortgagees that seem to have been long since paid, or canceled other ways, and also a debt he owed Dudley, which, as stated in the mortgage, then amounted to $16,166.42, subject to a deduction for whatever might be due Blanton for brick and other work, etc., the amount of which was not then ascertained.

In 1863 Harrison Blanton and E. A. Dudley, the only child and heir-at-law of Jeptha Dudley, then deceased, entered into a written contract, acknowledged by them and recorded, in which, after reciting that Blanton was indebted to Jeptha Dudley divers sums, growing out of various transactions, part of which indebtedness was secured by mortgage, and that, at the time it was executed, part of the farm was under execution, and afterwards purchased by Dudley, and deeds made to him therefor, and for other lots, they agreed as follows: That all the former conveyances, mortgages, and other securities held by Jeptha Dudley were re-affirmed. that Blanton should pay E. A. Dudley $5,090.21 within five years from that date, and the interest thereon at

the end of each year; that if Blanton complied with this stipulation, Dudley was to reconvey to him all the property for which Jeptha Dudley held conveyances and mortgages, and the entire indebtedness of Blanton to E. A. Dudley as an heir, as well as representative of Jeptha Dudley, was to be thereby discharged and satisfied. But on failure of Blanton to pay the principal, or any instalment of interest, at the time specified, Dudley was to be no longer bound to take the above-mentioned sum in full satisfaction of his indebtedness, but might, if he thought proper, fall back upon the original conveyances and mortgages, and regard the payments, if any, which might be made by Blanton, as payments on the indebtedness as it stood before the contract. And upon the final payment of the $5,090.21 as specified, Dudley was to relinquish, in favor of the heirs of Betsy Blanton, the over plus of his claim above that sum and interest, with the security which he had upon the farm on which Blanton then resided, for the payment thereof.

In 1869 they entered into another contract, also acknowledged and recorded, in which it was agreed that Blanton, having failed to make all the payments of the sum mentioned within the time specified in the contract of 1863, Dudley was thereby released from the obligation to relinquish the overplus of his claim in favor of the heirs of Betsy Blanton; but Blanton having since finished paying the sum of $5,090.21, with interest, Dudley then and thereby relinquished, released, and conveyed to him during his life all the lands and estate contemplated and mentioned in the contract of 1863, except certain lots which were released abso-

lutely, and also relinquished, in favor of the heirs of
Mrs. Blanton, said over plus of debt claimed by him,
with all the security, or securities, which he held for its
payment, not, however, to be enforced during the life
of Harrison Blanton. But Dudley was not to be re-
sponsible for the relinquishment, and was to be indem-
nified against any claim of the heirs on that account.

A demurrer having been sustained to the answer and
cross-petition, and judgment rendered for the sale of
the 100 acres of land to satisfy the debt due appellee,
the heirs of Mrs. Blanton prosecuted an appeal to this
court and the judgment was reversed, it being held in
the opinion rendered that the facts stated by them
showed a *prima facie* right in appellants, and that the
lower court erred in sustaining the demurrer to their
pleading.

Upon a return of the cause, the present appellee,
Murray, filed his answer, in which he denied that there
existed any over plus of the debt, for the payment of
which the mortgage of 1846 was executed to Jeptha
Dudley, beyond the $5,090.21 paid by Harrison Blanton
between 1863 and 1869, and also denied he had any no-
tice, actual or constructive, of the attempted transfer
by E. A. Dudley to appellants.

The action having been submitted upon the pleadings
and proof, the lower court again rendered judgment for
the sale of the 100 acres of land to satisfy Murray's
debt, and the case is now here upon appeal from that
judgment.

The parties to the mortgage of 1846 not only then
left undetermined the amount to which Blanton was
entitled as a credit on the mortgage debt of $16,186.42.

but, so far as this record shows, it continued unsettled and undetermined during the life of Jeptha Dudley. Nor was the amount determined, or even estimated and stated, in the contract of 1863. It is recited in that contract that Blanton was indebted to Jeptha Dudley in divers sums of money, growing out of various transactions, part of which indebtedness is secured by a mortgage on his farm and other property. But is not stated what the nature of these transactions were or the amount involved, nor is there in the record any account, memorandum, or written evidence showing or conducing to show what was the over plus, or balance due by Blanton to the estate of Jeptha Dudley at the date of the contract of 1863. Besides, if there existed data sufficient to arrive at the proximate amount of such over plus, it would still be uncertain how much of it was secured by the mortgage of 1846, and how much not, for it is recited in the contract of 1863 that only part of the indebtedness of Blanton to Jeptha Dudley was secured by mortgage.

E. A. Dudley and Harrison Blanton are the only two witnesses who testify in regard to that indebtedness.

The former does not state anything on the subject. The latter is biased by both his feelings and interest. For, if the 100 acres of land be made subject to appellees' debt, the estate of his children and grandchildren, as well as his own life estate in the farm, will be lessened to that extent. Moreover, he is confronted by his own act in executing the mortgage of 1874, which was fraudulent, if his statement, as a witness, that such over plus exists, be true.

In his deposition he says that the credit to which he

was entitled in 1846 was stated to be about $8,000, but does not recollect how he got the amount, but says it corresponds with J. Dudley's views of his indebtedness, and with E. A. Dudley's views. He farther says that at the time of the contract of 1863 he did not know how much he owed the estate of Jeptha Dudley, but that no part of the mortgage debt was paid during his life time or previous to 1863, and no settlement took place between them to ascertain the amount; that he and E. A. Dudley did not agree upon any given sum as due in 1863, but they were satisfied it was about $11,000, and the object of the witness was to pay about half.

These statements are not consistent of themselves, or with the contract of 1863. If it is true that at the date of the mortgage of 1846 he was entitled to a credit of only $8,000, and paid nothing to Jeptha Dudley or E. A. Dudley afterwards, it can not be that the true balance in 1863 was $11,000. Nor can the precision with which the amount he then agreed to pay was fixed on be reconciled with his statements as a witness, that he did not then know how much he owed, and that he and E. A. Dudley did not agree upon any given sum as due. A promise to pay a sum certain, indicated not in round numbers, but by dollars and cents, as $5,090.21, implies a settlement arrived at by calculation, and amounts to more than a mere estimate made without data. It is, therefore, not an unreasonable conclusion that they did, in 1863, ascertain and determine the amount then due with the same certainty that they fixed upon the amount Blanton agreed to pay, and that the amount of the over plus was not stated in the contract for the reason that it did not exist.

It is true that the witness, after making the statements mentioned, furnished a written statement made out during an adjournment of the deposition taking, showing the balance, or over plus, due appellants to be $12,442.

But in that statement he fixes the credit he was entitled to in 1846 at $10,000, instead of $8,000, as previously stated by him, or $8,100, as stated by appellants. in their pleading, and, in contradiction of the acknowledgment by E. A. Dudley himself in the paper of 1869 of full payment, he credits himself by only a partial payment of the $5,009.21.

Appellants were not parties to either the contract of 1863 or the one of 1869, paid no consideration for the transfer by Dudley to them, do not appear, from the record, to have ever accepted, nor, until this action was commenced, to have ever set up claims to this gift, which is munificent if real. On the contrary, B. H. Blanton, one of the heirs, testified as a witness that at the time he and Harrison Blanton borrowed the money from appellee, and the mortgage of 1874 was executed, he conscientiously believed the land mortgaged was free from incumbrance.

At that time the original debt of Harrison Banton had existed almost twenty-eight years, during more than fifteen years of which period Jeptha Dudley resided near to Blanton, thus raising a presumption of payment not, in our opinion, rebutted by the facts and circumstances of this case. For whether any balance of the debt is now due, and, if so, how much, is not shown by any written evidence whatever, was not fixed by Jeptha Dudley during his life, or stated in the con-

tracts of 1863 or 1869, and if now established at all, it must be done by the sole testimony of an interested witness eighty-six years old, whose evidence involves want of good faith on his part in borrowing the money from appellee and executing the mortgage to secure it.

"Literal exactness in describing in a mortgage the indebtedness is not required. It is sufficient if the description be correct, so far as it goes, and full enough to direct attention to the sources of correct and full information in regard to it." (Jones on Mortgages, section 70.) It is generally held to be sufficient if it appears that a debt is secured and that the amount of it may be ascertained by reference to other instruments, or by inquiry otherwise. (*Ibid*, section 344.)

By sec. 24, art. 1, chap. 43, General Statutes, it is provided that a vender of real estate who conveys the title before the purchase money is paid shall not have a lien for the same against *bona fide* creditors and purchasers, unless it is stated in the deed what part of the consideration remains unpaid. While that provision has not been made to extend to mortgages, and the rule may not be strictly applied to them, still there is no reason why the description of the debt should not be full enough as to the amount intended to be secured by a mortgage, to enable creditors and purchasers, by reasonable diligence, to discover it.

Conceding the contracts of 1863 and 1869 to be recordable instruments, and constructive notice of appellants' claim, yet appellee could not, by the most diligent inquiry, have ascertained the amount of over plus claimed by them, or even the approximate amount, the only source of information being Harrison Blanton,

who had, by his conduct, declared no such surplus existed.

Considering the staleness of appellants' claim, the circumstances under which it was attempted to be transferred to them, and the absence of reliable evidence to show the amount of it, or that it exists for any amount, we are of the opinion it should not avail them against appellee, who, in good faith and without such notice, as the law contemplates, loaned his money and took a mortgage on the 100 acres of land for its security.

The judgment must be affirmed.