ELLEN C. MILAM *v.* ROBERT M. MILAM *et al.*

(*Nashville.*   December  Term,  1917.)

1. **LIENS.**  "Equitable lien."

An "equitable lien," strictly speaking, is not a *jus in re* or a *jus ad rem*, but is the right to have the property subjected in a court of equity to the payment of the claim, being a floating equity until action by the court is invoked.  (*Post, p. 691.*)

Cases cited and approved:  Durant v. Davis, 57 Tenn., 522; Brown v. Bigley, 3 Tenn. Ch., 618;  Westall v. Wood, 212 Mass., 540.

2. **LIENS.**  Equitable lien.  Intent.

To create an equitable lien there must be an intent to make the particular property, real or personal, a security for the obligation;  but, that intent being clear, equity will treat an agreement to give a mortgage or lien as effective to create an equitable lien, where money has been parted with on good faith that there would be a compliance, a maxim underlying the doctrine being that equity regards as done that which ought to bedone.  (*Post, p. 692.*)

Case cited and approved:  Hurley v. Atchison, etc., R. Co., 213 U. S., 126.

3. **SUBROGATION.**  Lien rights.  Right of person advancing money to purchasers.

Had money advanced by complainant to the purchasers of realty been used to retire notes executed to the vendor for the property, on failure of the equitable mortgage evidenced by the purchasers' indorsement of notes, complainant would have been entitled to be subrogated to the lien rights of the vendor.  (*Post, pp. 692-696.*)

4. **LIENS.**  Equitable lien.  Advancement of money for purchase of property.

Where complainant advanced money to her son and his wife with which they purchased residence property, and the son and

Milam v. Milam.

wife executed to complainant a series of notes to represent the
advancement sum, on the back of each note being written the
agreement that it was secured to its face value by a first lien
on the property, which agreement was signed by the son and
his wife, though there was no acknowledgment of the indorsed
stipulation, complainant was entitled to have an equitable lien
declared on and enforced from the property after death of
the son's wife, since equity will regard that as done which in
good conscience ought to be done. (*Post, pp.* 692-696.)

Cases cited and approved: Ice & Coal Co. v. Alley, 127 Tenn.,
173;  Bell v. Bell, 174 Ala., 446;  Osgood v. Osgood, 78 Mich., 290;
Hughes v. Mullaney, 92 Minn., 485;  Leary v. Corvin, 181 N. Y.,
222;  Beckwith v. Sheldon, 168 Cal., 742;  Pilcher v. Smith,
39 Tenn., 208.

Cases cited and distinguished:  Poole v. Tannis, 137 Wis., 363;
Leary v. Corvin, 181 N. Y., 222.

FROM DAVIDSON.

Appeal from the Chancery Court of Davidson
County.—JAS. B. NEWMAN, Chancellor.

THOS. W. WRENNE and M. P. O'CONNOR, for com-
plainant.

JAS. A. RYAN, guardian *ad litem.*

MR. JUSTICE WILLIAMS delivered the opinion of the
Court.

. The bill of complaint was filed to enforce a lien
upon realty for the repayment of a sum advanced by
complainant toward its purchase.

Robert M. Milam, the son of complainant, Ellen C.
Milam, married, and he and his young wife were de-

sirous of purchasing a home in one of the best residential sections of the city of Nashville. He had only $1,700, and the property they preferred would cost approximately $7,000. Complainant advanced the difference, paying the sum to the owner vendor, Ogden, under an agreement with her son and daughter that she was to have a lien upon the property for the security of its repayment to her. Accordingly, a deed was executed by Ogden to Kate S. Milam, the young wife, to her general estate; and Robert M. and Kate S. Milam executed to the complainant a series of notes to represent the advancement sum. On the back of each note was written this agreement, which described the property in question:

"This note is secured to its face value by a first lien on the property on the southwest corner of Twentieth avenue and Broad street, known as lot No. 213 of O. B. Hayes' plan, Nashville, Tennessee. In acknowledgment hereof, witness our signatures attached.

"ROBERT M. MILAM.

"KATE S. MILAM."

There was no acknowledgment of this indorsed stipulation.

Mrs. Kate S. Milam died, leaving three small children, after having retired some of the notes of the series. The bill was filed to enforce payment of those notes that remained unpaid.

The guardian *ad litem* of the defendant minor children urges in their behalf that the attempt to declare a lien upon the land, by said indorsement, must fail

because Kate S. Milam was a *feme covert,* incapable of contracting to that end at the date of the transaction without privy acknowledgment, and, further, that the court lacks power to declare and enforce any equitable remedy, if that attempt to fix a lien be invalid.

The chancellor declared a lien in favor of complainant, but on appeal the court of civil appeals reversed this ruling. That court states that the case is one of hardship on complainant, but "that we are unable to discover wherein we can give her any relief, but we express the hope that the higher court can do what we are unable to do: "Find a way for her out of this difficulty.'"

Must a court of equity confess its inability to afford relief in a case of such manifest hardship? If so, an age-long boast of equity must fail of vindication.

The court of civil appeals states that a decision of this court was a barrier to the rendition of what it deemed a just decree.

In that case, *Durant* v. *Davis,* 10 Heisk. (57 Tenn.), 522, it appeared that Elizabeth Davis, a married woman, borrowed of Mrs. Durant $500 with which to make the partial cash payment on a lot in Memphis, promising to give a mortgage on the lot to secure the same. A note was executed for the amount. Upon a bill being filed setting up two theories—one of a resulting trust, and the other of complainant's subrogation to a vendor's lien—the court held that Mrs. Durant was entitled to neither remedy. There was

138 Tenn.—44

no allegation or prayer in the bill of complaint in respect of an equitable lien as a remedy distinct from the two that were sought.

It is upon that distinct doctrine, some phases of which have been developed in comparatively recent years, and since the decision in *Durant* v. *Davis,* that a number of courts have awarded relief on such facts as are presented on this record.

Chancellor COOPER, in *Brown* v. *Bigley,* 3 Tenn. Ch., 618, remarked that the inclination of the courts of this county has been to enlarge the doctrine of the equitable lien or charge, with a view to the attainment of justice, without much respect for the technical restrictions of the common law. It might be added that, in part, at least, the expansion of the doctrine has been for the purpose of meeting the demands of justice in cases where other and earlier developed equitable remedies had themselves proved inadequate because of the fact that they had become formalized and encrusted by limiting or restrictive rules. Equity in that attitude was forced to do for doctrines of her own formulation what she had originally set herself to do for those of the common law—afford amelioration in respect of their rigidity and lack of pliability to bring as a product a just result in a decree settling the rights of litigants. An illustration of this is found in the doctrine of subrogation, a creation of equity, or rather a graft on equitable jurisprudence from the civil law. The steady growth and expansion of that doctrine in im-

portance and in liberality of application to various subjects and classes of persons has often been commented on by judges and law writers.

It has been said that the doctrine of equitable lien, in certain aspects, is not essentially different from that of the doctrine of subrogation, and, similarly, it is applied in cases where the law fails to give relief and justice would miscarry but for its declaration. The doctrine, however, does not afford a remedy without recognized bounds, nor is it "to be applied according to the measure of conscience of the particular chancellor any more than," as an illustrious law writer said, "to the measure of his foot." Equity called it into being, and enforces it on the principle that a person, having gotten property of another, ought not in good conscience to retain it as a thing freed of obligation to respond.

An equitable lien, strictly speaking, is not a *jus in re* or a *jus ad rem,* but is the right to have the property subjected in a court of equity to the payment of the claim. It is a floating equity until action by the court is invoked.

"Even in the absence of an express contract, a lien, based upon the fundamental maxims of equity, may be implied and declared by a court of chancery out of general considerations of right and justice as applied to the relations of the parties and the circumstances of their dealings." 17 R. C. L., p. 605; 3 Pomroy, Eq. Jurisp., sections 1237, 1239; *Westall v. Wood*, 212 Mass., 540, 99 N. E., 325.

There must be an intent to make the particular property, real or personal, a security for the obligation; but, that intent being clear, equity will treat an agreement to give a mortgage or lien, as effective to create an equitable lien, where money has been parted with on faith that there would be a compliance. As Pomeroy says, one of the maxims underlying the doctrine is that equity regards as done that which ought to be done. *Hurley* v. *Atchinson, etc., R. Co.,* 213 U. S., 126, 29 Sup. Ct., 466, 53 L. Ed., 729.

In the case before us that intent is clear; it was manifested by the indorsement on the note, which in effect was an equitable mortgage. *Ice & Coal Co.* v. *Alley,* 127 Tenn., 173, 181, 154 S. W., 536, and cases cited.

If we assume, without deciding, that it failed in respect of enforceability as to one of those signing it, Kate S. Milam, the wife, because she did not privily acknowledge it as our statutes required, yet the just expectations of the lender are not to be defeated by the failure of those at whose instance the money was so furnished.

Had the money been used to retire notes executed to the vendor for the property, then, upon failure of the equitable mortgage evidenced by the indorsement, it seems clear that complainant, Ellen C. Milam, would have been entitled to be subrogated to the lien rights of the vendor. *Bell* v. *Bell,* 174 Ala., 446, 56 South., 926, 37 L. R. A. (N. S.), 1203 and note.

On the facts appearing, she is entitled to have an equitable lien declared and enforced.

In *Poole* v. *Tannis,* 137 Wis., 363, 118 N. W., 188, 864, a mother advanced $900 to her son to be used in purchasing and improving a lot, repayment to be secured by a lien upon the lot. Repayment was refused, and no such lien was fixed by the son. The court, after holding that the mother could not be awarded the *status* of a holder of a vendor's lien, as was ruled in *Durant* v. *Davis,* supra, said:

"The question arises whether the plaintiff under the established facts is not entitled to the relief of an enforcement of an equitable lien upon the premises for the sums she contributed to the purchase of the lot and the building of the house thereon, in view of the fact that she relied on the agreement that the property should stand as security for the money she advanced to defendant to purchase and improve the lot, and defendant's refusal, after full performance of the agreement by plaintiff, to so secure the money advanced. It is shown that the money was advanced by the mother to the son upon the understanding that its repayment should be secured by a lien upon the premises, though the agreement established was not sufficiently clear and definite to provide for a mortgage security which she prayed should be specifically enforced. It is also plain that the son, through this arrangement and the confidential relationship between himself and his mother, obtained the money from her to acquire this property and that he now re-

fuses to carry out the agreement. The mother having advanced the money on the faith of the son's promise and the defendant having used it for the acquisition of the property gives a basis for the interposition of equity to secure her a lien on the property and to enforce repayment out of it of the sum so advanced by her. *Osgood* v. *Osgood,* 78 Mich., 290, 44 N. W. 325; *Hughes* v. *Mullaney,* 92 Minn., 485, 100 N. W., 217; *Leary* v. *Corvin,* 181 N. Y., 222, 73 N. E., 984 [106 Am. St. Rep., 542, 2 Ann. Cas., 664]."

In *Leary* v. *Corvin,* 181 N. Y., 222, 73 N. E., 984, 106 Am. St. Rep., 542, 2 Ann. Cas., 664, a daughter advanced a sum to her father upon the promise that he, with it and other funds, would buy "a house for a home," which should go to her on the death of her parents. The father took deed in his own name, without any trust provision for the daughter. After demonstrating that there was no resulting trust, because of the settled rule requiring that, in order to raise the trust, the payment must be, either of the whole consideration or some aliquot part thereof, or for the value of some particular estate in the premises conveyed, the court proceeded to hold:

"Any equitable title in the property inured to the plaintiff, if at all, either as a resulting trust by virtue of her contribution towards the consideration of the purchase, or through the enforcement of the executory contract of her father that, after his death and that of his wife, the plaintiff should have the prop-

erty.   As we already have seen, both of these claims fail.

"It does not follow, however, that the plaintiff is entitled to no relief.   She made her contribution to the purchase of the property on the faith of an agreement with her father, which he has violated by failing to secure to her the property upon his death, and the relation between the parties was one of trust and confidence.   The plaintiff's money having been thus appropriated to the acquisition of the property, she has an equitable lien thereon for its amount."

See, also, *Beckwith* v. *Sheldon,* 168 Cal,. 742, 145 Pac., 97, Ann. Cas., 1916A, 963; 19 R. C. L., p. 274.

The same reach of equity's power was manifested in *Pilcher* v. *Smith,* 2 Head (39 Tenn.), 208.   There a married woman had executed a bond for title, and her vendee paid the purchase price.   Upon the married woman declining to comply with the terms of her bond because of her coverture, the court held that, upon failure of the bond as an enforceable contract, a lien would be enforced against the property at the suit of the disappointed vendee for the repayment of the purchase money.   While Judge McKinney did not classify the lien, it was later classed by Chancellor Cooper as an equitable lien in *Brown* v. *Bigley,* supra.

There was in the pending case an attempt to fix a lien upon the property for the security of the fund that the mother paid for it; and a court of equity, regarding that as done which in good conscience

ought to be done, will declare and enforce the equitable lien.

Reverse the decree of the court of civil appeals, and remand the cause to the chancery court for further proceedings consistent with this opinion.