## W. Lloyd Hunt *v.* Emma J. Curry *et al.*[*]

### (*Knoxville.* September Term, 1925.)

1. **ACKNOWLEDGMENT.**

   Acknowledgment of trust deed by clerk of court without certificate showing official authority of such clerk is defective, and instrument is not entitled to registration, in view of Thompson's-Shannon's Code, section 3715, subsection 1, section 3721, and Uniform Acknowledgments Act. (*Post, pp.* 21, 22.)

   Acts cited and construed: Acts 1919, ch. 48.

   Case cited and approved: Bank v. McCarty, 42 S. W., 4, 99 Tenn., 471.

   Code cited and construed: Secs. 3715, subsec. 1, sec. 3721 (T.-S.).

2. **MORTGAGES.** Deed reciting consideration as consisting partly of notes secured by trust deed held to create equitable mortgage on land.

   Recitals in properly acknowledged and duly recorded deed that part of consideration was promissory notes secured by trust deed on lands conveyed *held* to reserve equitable mortgage on land. (*Post, pp.* 22, 23.)

3. **LIENS.** Every executory agreement in writing, indicating intention to make particular property security for debt or promising to convey property as security, creates equitable lien.

   Every express executory agreement in writing, indicating intention to make property described security for debt or promising to transfer property as security, creates equitable lien good against original contractor, his heirs, representatives, voluntary assigns, purchasers, or incumbrancers with notice. (*Post, pp.*, 23, 24.)

   Cases cited and approved: Ice & Coal Co. v. Alley, 154 S. W., 536; Milam v. Milam, 200 S. W., 826; Cook v. Cook, 40 Tenn., 719.

4. MORTGAGES. Literal exactness in describing indebtedness secured by mortgage or trust deed is not required.

Literal exactness in describing indebtedness secured by mortgage or trust deed is not required, but it is enough if description is correct as far as it goes, and full enough to call attention to sources of accurate and complete information, and not calculated to mislead as to nature and amount of debt. (*Post, pp.* 24, 25.)

Cases cited and approved: Aetna Life Ins. Co. v. Finch, 84 Ind., 301; Ricketson v. Richardson, 19 Cal., 330; Sheafe v. Gerry, 18 N. H., 245; Curtis v. Flinn, 46 Ark., 70; Morris v. Murray, 82 Ky., 36; New v. Sailors, 16 N. E., 609; Bumpas v. Dotson, 26 Tenn., 310; Muskingum Bank v. Carpenter, 7 Ohio, 21.

5. COVENANTS.

Although conveyance is by deed poll, covenants are binding on grantee accepting benefits of deed. (*Post, p.* 25.)

Case cited and approved: Carnegie Realty Co. v Railroad, 189 S. W., 371.

6. MORTGAGES.

Recording deed reserving lien is notice to all the world of lien so reserved. (*Post, p.* 25.)

7. MORTGAGES. Agreement to make trust deed as contained in conveyance is entitled to independent registration (Thomp.-Shan. Code, section 3697, subsec. 1).

Where deed specified portion of consideration as notes to be secured by trust deed on land conveyed, such covenant, being binding on grantee accepting benefits of deed, *held* to constitute contract creating equitable lien capable of independent registration, in view of Thompson's Shannon's Code, section 3697, subsec. 1. (*Post, pp.* 25, 26.)

Cases cited and approved: Morgan & Co. v. Snell, 62 Tenn., 382; Merriman & Smith v. Polk, 52 Tenn., 717; Cook v. Cook, 40 Tenn., 719.

Code cited and construed: Sec. 3697, subsec. 1. (T.-S.).

Hunt v. Curry.

8. **MORTGAGES.** Under evidence, beneficiary of second trust deed of purchaser held to have notice of prior claim of vendor to lien on land, though first trust deed was ineffective through defective acknowledgment.

Where deed recited consideration, including notes, to be secured by trust deed to land, and second trust deed referred to former as prior incumbrance, beneficiary of second trust deed *held*, under evidence, chargeable with actual notice of prior incumbrance, though the first trust deed itself was defectively acknowledged. (*Post, pp.* 26, 27.)

9. **MORTGAGES.** Creditors of grantee under deed creating equitable lien to secure purchase-money notes held charged with notice by due registration thereof (Thompson's-Shannon's Code, Sections 3750, 3752).

Creditors of grantee under deed creating equitable lien to secure purchase-money notes *held* charged with notice by due registration thereof; in view of Thompson's-Shannon's Code, section 3750, although they had no actual knowledge of trust deed to secure notes, and would not have been affected thereby in any event because of defective acknowledgment, in view of section 3752. (*Post, p.* 27.)

Cases cited and approved: Martin v. Lincoln, 72 Tenn., 334; Wilkins v. McCorkle, 112 Tenn., 688; Campbell v. Ice & Coal Co., 150 S. W., 427, 126 Tenn., 524.

Codes cited and construed: Secs. 3750, 3752 (T.-S.).

10. **MORTGAGES.**

Recorded equitable mortgage is good as against creditors. (*Post, pp.* 27, 28.)

Cases cited and approved: O'Neal v. Seixas, 480, 745; Henderson v. McGhee, 53 Tenn., 55; Kinsey v. McDearmon, 45 Tenn., 392.

11. **MORTGAGES.** Re-registration of trust deed with defective acknowledgment corrected held effective, though after grantor's death, where made before suggestion of insolvency of his estate.

Where acknowledgment of trust deed by clerk of court was defective because without certificate of clerk's authority, re-registration

of deed with proper certificate, although after death of grantor, but prior to suggestion of insolvency of his estate, *held* effective to create lien as against creditors. (*Post, p.* 28.)

Cases cited and approved: Gwynne v. Estes, 82 Tenn., 662; Watson v. Watson, 60 Tenn., 387; Herman v. Clark, 39 S. W., 873.

12. **DOWER.**

Under Thompson's-Shannon's Code, section 4140, widow is entitled to dower in land of husband dying before foreclosure or sale under deeds of trust, even though given to secure purchase money. (*Post, pp.* 28, 29.)

Case cited and approved: Gregg v. Jones, 62 Tenn., 443.

Code cited and construed: Sec. 4140 (T.-S.)

---

*Headnotes 1. Acknowledgments, 1 C. J., Section 166 (Anno); 2. Mortgages, 27 Cyc., p. 976; 3. Liens, 37 C. J., Section 19; 4. Mortgages, 27 Cyc., p. 1057; 5. Covenants, 15 C. J., Section 5; 6. Mortgages, 27 Cyc., p. 1157 (Anno); 7. Mortgages, 27 Cyc., p. 1158 (Anno); 8. Mortgages, 27 Cyc., p. 1187 (Anno); 9. Mortgages, 27 Cyc., p. 1157 (Anno); 10. Mortgages, 27 Cyc., p. 1157 (Anno); 11. Mortgages, 27 Cyc., p. 1177 (Anno); 12. Dower, 19 C. J., Section 86.

---

FROM COCKE.

---

Appeal from the Chancery Court of Cocke County to the Court of Civil Appeals, and by *certiorari* to the Court of Civil Appeals from the Supreme Court.—HON. M. H. GAMBLE, Chancellor.

BOURNE, PARKER & JONES, GEO. W. GORRELL, and J. O. PHILLIPS, for W. Lloyd Hunt, Adm'r.

W. D. McSWEEN and SUSONG, SUSONG & PARVIN, for Chilhowee Extract Co. and others.

TAYLOR & BELL, FRANTZ, McCONNELL & SEYMOUR and FRANCIS J. HEAGEL, for John C. Arbogast and J. L. Martin.

MR. CHIEF JUSTICE GREEN delivered the opinion of the Court.

Chilhowee Extract Company, a New Jersey corporation, was the owner of six thousand nine hundred fifty-six acres of land in Cocke county and Sevier county, Tenn.  On November 19, 1919, John C. Arbogast of Asheville, N. C., made a written proposition to purchase this land at $25 per acre, $40,000 cash, and three notes for the balance, payable in one, two, and three years, the notes to be secured by deed of trust.  This offer was accepted by writing, tentatively, December 5, 1919.  It was necessary to make a survey of the land, and other negotiations were had between the parties, and the deal was not finally closed until August 24, 1920.

Meanwhile Arbogast had sold his purchase to John Curry, of Asheville, N. C., and, at the request of Arbogast, Chilhowee Extract Company, on August 24, 1920, executed a deed to the aforesaid land to John Curry. This deed recited the receipt of a valuable consideration, cash in hand paid, and a further consideration evidenced by three promissory notes secured by deed of trust.  The contents of the deed of Chilhowee Extract Company to Curry will be more particularly set out hereafter.

To secure his three purchase-money notes mentioned in the aforesaid deed, on August 24, 1920, John Curry conveyed the said land in trust to Walter S. Dolman, trustee.  The consideration of the deed of Chilhowee

Extract Company to Curry, in addition to the $40,000 cash, included three notes for $44,633.33 each, making a total consideration of $173,900.

As just stated, Arbogast sold the land to Curry before the deed was made by Chilhowee Extract Company. The consideration for this sale of Arbogast to Curry was $110,633.33, evidenced by thirteen notes, payable during a period of five years. To secure the payment of these notes of Curry to Arbogast, likewise on August 24, 1920, Curry made another deed of trust to Henry B. Stevens, trustee. In this trust deed Curry covenanted "that the said above described land is free from any and all incumbrances placed thereon by him, except a deed of trust executed by the said John Curry to Walter S. Dolman, trustee, to secure the payment of $133,900 due Chilhowee Extract Company as evidenced by three promissory notes described as follows." Said notes are then fully described.

The deed of Chilhowee Extract Company to Curry and the trust deed of Curry to Dolman, trustee, were filed in the register's office of Cocke county, September 4, 1920, at 10:30 a. m. The trust deed of Curry to Stevens, trustee, was filed in the same office on the same day at 11 a. m. All these instruments were forthwith inscribed on the records in the office of the register of Cocke county.

The three instruments just referred to were all filed in the office of the register of Sevier county on October 14, 1920, and were forthwith spread upon the records there.

The deed of Chilhowee Extract Company to John Curry was properly acknowledged before a notary public in due form, and no question is made upon this acknowledgment.

The trust deed of Curry to Dolman, trustee, and the trust deed of Curry to Stevens, trustee, were acknowledged at Asheville, N. C., both September 2, 1920, before John Cathey, clerk of the superior court of Buncombe county, N. C. Both certificates bore the seal of the court, but neither certificate had attached or appended a certificate of the judge, chief justice, or presiding magistrate of the superior court of Buncombe county, N. C., or a certificate of the secretary of State, or clerk of another court of record of that State, as to the official character of John H. Cathey, the genuineness of his signature, or his authority to take acknowledgments.

Curry paid $4,633.33 to Chilhowee Extract Company on its notes, and paid interest on all these notes up to September 1, 1921. He appears to have reduced the Arbogast notes to $103,000.

John Curry died January 30, 1923, having made only the small payments just noted on these notes due Chilhowee Extract Company and Arbogast. Such being the plight of its claim against Curry, Chilhowee Extract Company, as it was authorized to do under the Dolman trust deed, on February 8, 1923, proceeded through said trustee to advertise the land for sale for payment of its notes; the amount then due on the notes being about $142,000.

On February 19, 1923, Arbogast, as he was authorized to do under the Stevens trust deed, proceeded through said trustee to advertise the land for sale for payment of his notes; the amount due him at that time being about $103,000.

153 Tenn.—2.

Sale under the Dolman trust deed was advertised for 1 p. m. April 21, 1923. Sale under the Stevens trust deed was advertised for 12, noon, April 21, 1923.

Advertisement under the Stevens trust deed to secure the Arbogast notes contained this language:

"Said notes secured by said deed of trust are for the balance of the purchase money for the above-described lands, and said deed of trust is now a second mortgage or deed of trust upon said lands, and this sale will be made subject to the lien of said first deed of trust, being a deed of trust of even date with the said second deed of trust above described, and executed by said John Curry to Walter S. Dolman, trustee, to secure the Chilhowee Extract Company, the payment of three notes aggregating about $142,000, which said first deed of trust is duly recorded in Cocke and Sevier counties of Tennessee."

On April 2, 1923, Arbogast obtained a certificate of the judge of the superior court of Buncombe county, N. C., as to the official character of John H. Cathey as clerk of that court. This certificate of the judge was appended to the certificate formerly issued by the clerk, and the Stevens trust deed with the two certificates was again filed for record April 3, 1923, and recorded.

On April 16, 1923, Chilhowee Extract Company again filed the Dolman trust deed for record with an additional certificate from the judge of the superior court of Buncombe county, N. C., as to the official character of John H. Cathey, clerk, who had taken the original acknowledgment.

Prior, however, to April 16, 1923, when the Dolman trust deed was again filed for record with the corrected certificate, to-wit, on April 11, 1923, W. Lloyd Hunt, a

citizen of Asheville, N. C., a creditor of Curry holding Curry's note for $5,000, was appointed administrator of Curry's estate by the county court of Cocke county, Tenn., and qualified as such administrator. On the same day, April 11, 1923, in the county court of Cocke county, Tenn., Hunt suggested the insolvency of the estate of Curry, and the clerk of the county court of Cocke county entered the usual order reciting the suggestion of insolvency and directing the administrator to advertise for all persons having claims against said estate to appear and file the same on or before July 16, 1923.

On April 14, 1923, Hunt, administrator, filed a bill in the chancery court of Cocke county against Mrs. Emma J. Curry, widow of John Curry, the children and heirs at law of John Curry, Chilhowee Extract Company, Walter S. Dolman, trustee, John C. Arbogast, Henry B. Stevens, trustee, and J. L. Martin—the latter having purchased one of the Arbogast notes. This bill recited the appointment of Hunt as administrator, the suggestion of insolvency, that the assets of the estate of John Curry exceeded $1,000, and sought to transfer the administration of said estate to the chancery court. It was averred that Curry left no available personal property; that the only asset of the estate was the land in controversy; that the debts amounted to about $90,000, exclusive of the Chilhowee Extract Company's notes and of the Arbogast notes. It was charged that both the Dolman trust deed and the Stevens trust deed were defectively acknowledged, that neither was entitled to registration, that no efforts had been made to correct said defective acknowledgments until after the death of Curry, and that the notes secured by the two trust deeds were

consequently merely general claims against Curry's estate. The bill contained other matter not necessary to be mentioned in this connection.

Chilhowee Extract Company interposed many defenses, which we cannot pause to consider separately. It finally insisted that the Dolman trust deed was not defectively acknowledged, but, even if it were, for various reasons it was urged that a prior lien nevertheless existed upon the land for the security of Chilhowee Extract Company's notes, and, filing its answer as a cross-bill, it sought to have a sale of the land and the proceeds of said sale applied first to the satisfaction of its claim.

Arbogast answered and admitted that neither the trust deed executed to secure his notes nor the trust deed executed to secure Chilhowee Extract Company's notes was properly acknowledged or entitled to registration in the first instance, but he insisted that by again filing the Stevens trust deed with the corrected acknowledgment April 2, 1923, prior to the suggestion of insolvency April 11, 1923, the Stevens trust deed became the first charge upon the land, and that the Arbogast notes secured by said trust deed were entitled to be first paid out of the proceeds of the sale of the land. Arbogast prayed that his answer be treated as a petition for the sale of said land.

The widow filed appropriate pleading asserting her claim to dower in the land. Some other pleadings were filed and other steps taken which it is not necessary to detail. A reference was ordered, which showed unsecured claims against the estate of Curry amounting to about $27,000.

The chancellor decreed that by reason of its defective acknowledgment the Dolman trust deed was not entitled to registration, and that Chilhowee Extract Company, as to its notes, stood merely as a general creditor of Curry's estate; that by reason of being filed again with a corrected certificate, prior to the suggestion of insolvency, the Stevens trust deed became a first lien on the land, and the Arbogast notes were entitled to priority of payment. He decreed, however, that the widow's dower attached to the land ahead of the Stevens trust deed.

All parties have appealed. The court of appeals agreed with the chancellor as to the widow's dower, and agreed that the Dolman trust deed as originally authenticated was not entitled to registration. That court, however, was of opinion that a trust deed, duly executed during the lifetime of decedent, although not registered, was a charge upon the decedent's land prior to the claims of general creditors. The court of appeals was of opinion that the Stevens trust deed was a second mortgage, coming after the Dolman trust deed. So the result of the decision of the court of appeals was, that out of the sale of the land the widow's dower was to be first satisfied, next the notes of the Chilhowee Extract Company, then the Arbogast notes, and any balance to general creditors.

Each party adversely affected by the judgment of the court of appeals filed a petition for *certiorari*. All the petitions were granted, the whole case opened up, and we have heard full argument.

We think that the result reached by the court of appeals was correct, although we arrive at this conclusion

by a different process of reasoning, and do not intend to commit ourselves to all that is said in the opinion of the other court. The acknowledgment of the Dolman trust deed, as well as the acknowledgment of the Stevens trust deed, was insufficiently certified. These instruments were not authenticated as required by section 3715, subsec. 1, and section 3721, Thompson's-Shannon's Code, or as required by the Uniform Acknowledgments Act, chapter 48 of the Public Acts of 1919. That is to say, the official character of the clerk of the court taking the acknowledgment was not certified to by the judge, chief justice, or presiding magistrate of the court of which he was clerk, as required by section 3721, Thompson's-Shannon's Code. Nor was the official authority of said clerk verified by a certificate of the secretary of state of North Carolina, or by a certificate of the clerk of another court of record of that State, as required by chapter 48 of the Acts of 1919. The registration of an instrument so defectively acknowledged is ineffectual against the creditors of the grantor or purchasers from him without notice. *Bank* v. *McCarty,* 42 S. W., 4, 99 Tenn., 471.

As stated heretofore, however, the deed of Chilhowee Extract Company to Curry was properly acknowledged and was duly recorded, and this deed contains the following recital:

"This indenture made and entered into this 24th day of August, A. D. 1920, by and between the Chilhowee Extract Company, a corporation chartered under the laws of the State of New Jersey, and doing business under and in compliance with the laws of the State of Tennessee, with its principal Tennessee office or place of business in the town of Newport, Cocke county, Tennessee, party

of the first part, and John Curry, of Madison county, State of North Carolina, party of the second part, witnesseth:

"That the party of the first part for and in consideration of a valuable consideration, cash in hand paid to the first party, the receipt of which is hereby acknowledged, and a further consideration evidenced by three promissory notes of even date herewith, secured by trust deed of this date on the hereinafter described lands, executed by the party of the second part hereto, and to be forthwith duly recorded in Cocke county, and Sevier county, Tennessee, to which said deed of trust or trust deed reference is expressly made, has this day granted, bargained, sold, transferred and conveyed and by these presents, does grant, bargain, sell, transfer and convey unto the said John Curry, party of the second part, his heirs and assigns forever, all the following described lands, to-wit:"

We think there can be no doubt but that the language employed in said deed and just quoted created or reserved an equitable mortgage or lien on the land described in the deed.

It has been said by this court that every express, executory agreement in writing, whereby the contracting party sufficiently indicates an intention to make some particular property therein described or identified a security for a debt or other obligation, or whereby the party promises to convey or assign or transfer the property as security, creates an equitable lien on such property, good against the original contractor, his heirs, representatives, voluntary assignees, or purchasers or in-

cumbrancers without notice. *Ice & Coal Co.* v. *Alley,* 154 S. W., 536, 127 Tenn., 173.

The foregoing was expressly approved in *Milam* v. *Milam,* 200 S. W., 826, 138 Tenn., 686. In the latter case it was declared that equity will treat an agreement to give a mortgage or lien as effective to create an equitable lien, where money has been parted with on faith that there would be a compliance, upon the principle that equity regards that as done which ought to be done. True, it was said in *Milam* v. *Milam* that an equitable lien was neither a *jus ad rem* nor a *jus in re,* but a floating equity until action by the court was invoked. But such is the case with any lien not dependent on possession. It is merely a right to subject the property charged to the satisfaction of the debt secured—not a right to the property nor a right in the property. 37 C. J., 311, and authorities cited.

So this court has directly held that a written agreement to make a mortgage will be treated as an equitable mortgage. *Cook* v. *Cook,* 40 Tenn. (3 Head), 719.

The deed of Chilhowee Extract Company to Curry, as seen above, contains an express covenant for a trust deed to secure three purchase-money notes on land particularly described to be executed by the said Curry. This agreement is quite definite. No trustee was named, but that was an immaterial detail. The beneficiary of the trust deed, of course, was to be the grantor in the deed. The description of the indebtedness to be secured was adequate. Literal exactness in describing the indebtedness secured by a mortgage or trust deed is not required. It is enough if the description is correct as far as it goes and full enough to call attention to sources

of accurate and complete information, and the language employed is not calculated to deceive or mislead as to the nature or amount of the debt. *Ætna Life Ins. Co. v. Finch,* 84 Ind., 301; *Ricketson* v. *Richardson,* 19 Cal. 330; *Sheafe* v. *Gerry,* 18 N. H., 245; *Curtis* v. *Flinn,* 46 Ark., 70; *Morris* v. *Murray,* 82 Ky., 36; *New* v. *Sailors,* 16 N. E., 609, 104 Ind., 407, 5 Am. St. Rep., 632. See note, 49 Am. St. Rep., 207, and see, also, *Bumpas* v. *Dotson,* 26 Tenn. (7 Humph.), 310, 46 Am. Dec., 81.

The Dolman trust deed itself, defectively acknowledged and not entitled to registration, created an equitable lien or mortgage, good as between the parties, and good as against purchasers with notice. 19 R. C. L., 274; *Muskingum Bank* v. *Carpenter,* 7 Ohio, 21, 28 Am. Dec., 616.

Although the conveyance from Chilhowee Extract Company to Curry was by deed poll, nevertheless the covenants, are binding on a grantee who accepts the benefits of such a deed. *Carnegie Realty Co.* v. *Railroad,* 189 S. W., 371, 136 Tenn., 300, and cases cited.

This agreement as to the trust deed—this reservation of an equitable lien—was embraced in the deed of Chilhowee Extract Company to Curry as part of the consideration of the latter instrument. An express vendor's lien would have been reserved in the same way. When the deed containing the lien reserved is duly recorded, all the world is charged with notice of the lien so reserved. We see no reason for taking a distinction between the effect of such notice of an equitable lien and the effect of such notice of an express lien.

Moreover, the agreement as to this trust deed was such a contract as was entitled to independent registration, apart from the original deed in which it was con-

tained.    Section 3697, subsec. 1, Thompson's-Shannon's Code, provides for the registration of "all agreements and bonds for the conveyance of real or personal estate." The undertaking to make a trust deed was merely an agreement for the conveyance of this real estate.

When a title bond is registered, the vendor has no such interest in the land as can be levied on and sold by his creditors to the prejudice of his vendee. *Morgan & Co.* v. *Snell,* 62 Tenn. (3 Baxt.), 382; *Merriman & Smith* v. *Polk,* 52 Tenn. (5 Heisk.), 717. This is true, although in such a case the legal title remains in the vendor. So in the case before us, although by reason of defective registration of the trust deed the legal title to this property remained in Curry in so far as his creditors were concerned, still, in view of his recorded agreement to convey the land, he had no leviable interest. The privilege of recording agreements to convey land and the privilege of recording bonds to convey land are conferred in the same terms by subsec. 1 of section 3697, Thompson's-Shannon's Code. Each would be a barren privilege if creditors were not affected by such record.

Referring again to *Cook* v. *Cook,* 40 Tenn. (3 Head.), 719, it was there held that a covenant to make a mortgage would be treated as an equitable mortgage, and that such a mortgage was good against a purchaser with notice.

So far as Arbogast is concerned, he is in the attitude of a purchaser with notice of a prior claim of Chilhowee Extract Company on this land. The trust deed executed to Stevens to secure the Arbogast notes mentions as an incumbrance the Dolman trust deed to secure the notes of Chilhowee Extract Company. The advertise-

ment under the Stevens trust deed, heretofore quoted, likewise referred to the Dolman trust deed as a prior incumbrance and it proposed to have a sale subject to such prior incumbrance. Other proof in the record abundantly shows the knowledge of Arbogast.

Besides actual notice of the Dolman trust deed, Arbogast, as beneficiary of the Stevens trust deed, took under the deed of Chilhowee Extract Company to Curry, and was chargeable with notice of all the contents of that deed.

Curry's creditors perhaps had no actual knowledge of the defectively recorded Dolman trust deed, and would not have been affected by such knowledge had they possessed it. Thompson's-Shannon's Code, section 3752; *Martin* v. *Lincoln,* 72 Tenn. (4 Lea.), 334; *Wilkins* v. *McCorkle,* 80 S. W., 834, 112 Tenn., 688; *Campbell* v. *Ice & Coal Co.,* 150 S. W., 427, 126 Tenn., 524. They were affected, though, with notice of the equitable lien, which reached the records through the medium of the duly registered deed of Chilhowee Extract Company to Curry. If that lien was entitled to appear upon the records, and we think it was, then it was "notice to all the world." Thompson's-Shannon's Code, section 3750.

It was plainly intimated that the agreement to mortgage discussed in *Cook* v. *Cook, supra,* might have been registered, although it was not.

Where, under the registration laws, an equitable mortgage may be put upon record, it is good under such laws as against creditors. *O'Neal* v. *Seixas,* 4 So., 745, 95 Ala., 80.

We reserve an expression as to whether a trust deed, duly executed in the lifetime of a decedent but not registered until after his death, and until after a suggestion

of insolvency of his estate, would be a charge on his land prior to the claims of general creditors. Our decisions on this point do not appear to be harmonious. See *Henderson* v. *McGhee,* 53 Tenn. (6 Heisk.), 55, and *Kinsey* v. *McDearmon,* 45 Tenn. (5 Cold.), 392. Each of these cases has been referred to in later decisions. Since we conclude that the equitable lien created in the face of the deed of Chilhowee Extract Company to Curry, and duly appearing of record, is a charge on the land prior to the claims of general creditors, we do not have to consider the effect of the unregistered trust deed to Dolman.

We think the Arbogast notes secured by the trust deed to Stevens, while postponed to the notes of the Chilhowee Extract Company, come before, and must be paid out of the proceeds of the sale of the land ahead of the claims of general creditors. This results from the registration of the Stevens trust deed with corrected certificate prior to the suggestion of insolvency of Curry's estate, although the trust deed was not re-registered until after Curry's death. This court has expressly so declared the law in *Gwynne* v. *Estes,* 82 Tenn. (14 Lea), 662. Such a holding was foreshadowed in *Watson* v. *Watson,* 60 Tenn. (1 Baxt.), 387. Later the same result was reached in *Herman* v. *Clark* (Tenn. Ch. App.), 39 S. W., 873, affirmed by this court.

Likewise we think there can be no dispute as to the widow's right to dower in the land. Section 4140, Thompson's-Shannon's Code, provides: ''She shall also be entitled to dower in lands mortgaged or conveyed in trust to pay debts, when the husband dies before foreclosure of the mortgage or sale under the deed.''

It was pointed out in *Gregg* v. *Jones,* 62 Tenn. (5 Heisk), 443, that, although the mortgage or trust deed be given to secure purchase money, there was no escaping the force of this statute, and the wife was entitled to be endowed of land so mortgaged if the husband died before foreclosure or sale.

We are not aware that the authority of this case has ever been weakened by any subsequent expression of this court.

The dower claim would have preceded a trust deed free from fault and lawfully registered. Such claim must necessarily, therefore, precede a bare contract to make and record such an instrument.

It results that the decree of the court of appeals will be affirmed. The costs will be apportioned as directed by the court of appeals.