**In re Ronald Douglas MULLER and Regina Lynn Muller, Debtors.**

**Robert H. WALDSCHMIDT, Chapter 7 Trustee, Plaintiff,**

v.

**Leslie A. DENNIS, America's Wholesale Lender and Countrywide Funding Corp., Defendants.**

**Bankruptcy No. 93–08976.
Adv. No. 95–0045A.**

United States Bankruptcy Court, M.D. Tennessee.

Aug. 22, 1995.

Robert H. Waldschmidt, Howell & Fisher, Nashville, TN, for plaintiff.

Ernest Williams, IV, Sabin R. Thompson, Williams & Prochaska, P.C., Nashville, TN, for defendants.

## MEMORANDUM

KEITH M. LUNDIN, Bankruptcy Judge.

The issue is whether the Chapter 7 trustee's status as a judgment lien creditor under 11 U.S.C. § 544(a)(1) defeats an unrecorded deed of trust. The trustee prevails because under Tennessee law an unrecorded deed of trust is null and void as to a judgment lien creditor. The following are findings of fact and conclusions of law. FED.R.BANKR.P. 7052.

### I.

In July 1989, the debtors' purchase of real property was financed by Boatmen's National Mortgage Company. Boatmen's deed of trust was properly recorded on July 29, 1989.

On November 12, 1993, debtors refinanced the Boatmen's mortgage with defendant, America's Wholesale Lender ("AWL"). A new note and a new deed of trust were executed. Pursuant to the Truth in Lending Act and regulations,[1] debtors had three business days within which to rescind the refinancing contract. On November 17, 1993, debtors executed a "confirmation certificate" of nonrescission. AWL recorded its deed of trust on November 24, 1993. The mortgage and deed of trust were later assigned to defendant, Countrywide Funding Corporation. A release of Boatmen's mortgage was recorded in January, 1994.

On November 17, 1993, seven days before registration of the new deed of trust, debtors filed Chapter 7. Countywide does not claim that the debtors committed any fraud in connection with the refinancing or the filing of bankruptcy. The debtors reaffirmed the debt to Countrywide in this Chapter 7 case.

The trustee's complaint asserts that his rights as a judicial lien creditor pursuant to 11 U.S.C. § 544(a)(1) prevail over Countrywide's deed of trust which was unrecorded at

---

1. *See* 15 U.S.C. § 1635 (1988 & Supp.1993); 12 CFR § 226.23.

the commencement of this case. Among the flood of defenses raised by Countrywide, only two are colorable: the effect of "notice" under the Tennessee recording statutes and the defense of subrogation.

## II.

■ Section 544(a)(1) vests the trustee as of the commencement of a bankruptcy case with the rights and powers of a judgment lien creditor under applicable state law. 11 U.S.C. § 544(a)(1).[2] The trustee acquires the status of a judicial lien creditor by virtue of federal law, but applicable state law determines what powers that status confers. *See, e.g., Midlantic Nat'l Bank v. Bridge (In re Bridge),* 18 F.3d 195, 200 (3d Cir.1994) ("[The scope of § 544(a) ] avoidance powers vis-a-vis third parties is governed entirely by the substantive law of the state in which the property in question is located as of the bankruptcy petition's filing."); *Michael v. Martinson (In re Michael),* 49 F.3d 499, 500 (9th Cir.1995).

■ Since at least 1831, it has been the law in Tennessee that an unrecorded deed of trust or mortgage is null and void as to intervening judgment lien creditors. In its current codification, the Tennessee recording statute mandates this rule:

> **Unregistered instruments void as to creditors and bona fide purchasers.**— Any of such instruments not so proved, or acknowledged and registered, or noted for registration, shall be null and void as to existing or subsequent creditors of, or bona fide purchasers from, the makers without notice.

TENN.CODE ANN. § 66–26–103 (Miche 1993 & Supp.1994). With respect to creditors, the "pure race" nature of this Tennessee statute (and its predecessors) is traced and explained by one author as follows:

There are fundamental differences in the treatment of purchasers and creditors under the recording acts. As to the latter, the Tennessee statutes operate essentially in a "pure race" fashion, with all inquiry into notice by the creditor of the outstanding instrument being foreclosed. This doctrine is not of recent development, and since statehood, the courts have consistently permitted a creditor to levy on the basis of the record title, disregarding unrecorded instruments whether or not he was aware of them. Certain concepts relating to purchasers under the recording acts, such as actual notice and inquiry notice, therefore, have no bearing if creditors are involved. It would seem that, as to creditors, the purpose of registration is not so much to impart notice to them but rather to create a record of leviable property. The structure of the acts underscores the absolute necessity of a valid recordation as to this category. If the registration is defective in any material respect, a creditor of the grantor may levy on the record title, and it will not avail the grantee to prove the creditor had notice of the defectively recorded instrument.

Toxey H. Sewell, *The Tennessee Recording System,* 50 TENN.L.REV. 1, 54–5 (1982) (citations omitted) (hereinafter, *"Tennessee Recording System"*).

The Tennessee courts have long recognized that the lien of a judgment creditor defeats the rights of an unrecorded mortgage holder. *See, e.g., McCoy v. Hight,* 162 Tenn. 507, 39 S.W.2d 271, 272 (1931) ("Under our registration laws a deed is not effectual against creditors, ... until placed of record.");[3] *City Nat'l Bank v. City,* 158 Tenn. 143, 11 S.W.2d 853, 854 (1928) (An unregistered deed is void against creditors of the vendor.); *McAllester v. Aldridge (In re Anderson),* 30 B.R. 995, 1008 (M.D.Tenn.

**2.** Section 544(a)(1) provides:
The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by ... a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to

such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien., whether or not such a creditor exists....
11 U.S.C. § 544(a)(1) (1988 & Supp.1993).

**3.** *McCoy* was decided under section 3752 of Shannon's Code from which TENN.CODE ANN. § 66–26–103 (Michie 1993 & Supp.1994) is directly derived.

1983) (same result with respect to an improperly recorded deed).

■ Notwithstanding Countrywide's protests to the contrary, it has never been the law of Tennessee that "notice" or "knowledge" affects a levying creditor's precedence over an unrecorded instrument. *See McCoy v. Hight,* 39 S.W.2d at 272; *Hunt v. Curry,* 153 Tenn. 11, 27, 282 S.W. 201 (1925) ("Curry's creditors perhaps had no actual knowledge of the defectively recorded ... trust deed, and would not have been affected by such knowledge had they possessed it."); *Lookout Bank v. Noe,* 86 Tenn. 21, 5 S.W. 433, 436 (1887) ("[I]t [is] well settled that attaching creditors are not affected by notice of unregistered instruments."). *See generally Tennessee Recording System,* supra, at 53–7.

■ Here, the Chapter 7 trustee became a judicial lien creditor on November 17, 1993. On that date, neither Countrywide nor its predecessor, AWL, had recorded its deed of trust. Under Tennessee law the trustee prevails over the unrecorded instrument.

*Waldschmidt v. Mid–State Homes, Inc. (In re Pitman),* 843 F.2d 235 (6th Cir.1988), does not require a different result. In *Pitman* the Sixth Circuit considered whether the recording of a mortgage one month after an executory sale contract was a "contemporaneous exchange" for "new value" for purposes of the defense to preference recovery in 11 U.S.C. § 547(c)(1). The debtors in *Pitman* executed a land sale contract a month before the lender recorded a mortgage to secure the debtors' promises to pay. Bankruptcy ensued within 90 days. The trustee avoided the recording of the mortgage as a preference under § 547 before the bankruptcy and district courts. Reversing, the Sixth Circuit criticized "their rush to apply the statutory provisions in a mechanical way that increases the size of the bankruptcy estate, [and their] failure to consider the unfair and inefficient implications of the results they reached." *Id.* at 239. The Sixth Circuit stated that a "court of equity under normal principles of contract law would not have refused specific performance of either the duty to convey or the duty to mortgage

because of the buyer's insolvency." *Id.* at 240.

The concerns and criticisms of the *Pitman* court do not apply here. Unlike § 547, § 544(a)(1) does not grant to the trustee "a substantial additional mantle of power not available to any actual [creditor or] subsequent purchaser [under state law].... " *In re Bridge,* 18 F.3d at 200 (citations omitted). Section 544(a)(1) gives the trustee the remedies available to any judgment lien creditor under state law. For over 150 years the priority of an unrecorded mortgage has been vulnerable to an intervening judicial lien creditor under Tennessee law. *See generally Tennessee Recording System,* supra, at 55 & n. 325 (noting that Tennessee adopted many of the laws of the state of North Carolina upon statehood in 1796, and that North Carolina had a "pure race" system of recordation at that time). Had there been no bankruptcy filing, a judgment lien creditor of these debtors levying on November 17, 1993, would defeat Countrywide's unrecorded deed of trust under Tennessee law. The intervention of bankruptcy here causes nothing "unfair" or "inefficient" beyond the ordinary application of state law.

The Sixth Circuit was concerned in *Pitman* with the "economic consequences" of avoidance of the mortgage: "The principles adopted by the court[s] below would make it difficult for *a careful* builder or lender to justify making a home loan to anyone who could conceivably have financial problems in the near future. The result would be to increase the cost of mortgages.... " *In re Pitman,* 843 F.2d at 242 (emphasis added).

A *careful* lender would easily avoid the fate that here befalls Countrywide. Countrywide's (AWL's) handling of this transaction was slipshod. Countrywide knowingly took a substantial business risk by not immediately recording its deed of trust on November 12, 1993. Countrywide concedes that it could have recorded its mortgage on November 12, and admits that it chose not to do so because of the uncertainty of recovering its costs of recording if the borrowers rescinded within the truth-in lending rescission period. In other words, rather than "front" recording costs of a few hundred dollars, Countrywide

undertook the risk that an intervening creditor would trump its unrecorded deed of trust. Countrywide's lack of care is further demonstrated by its miscalculation of the amount tendered to the registration clerk, which caused additional delay in recordation.[4]

To protect its interests under Tennessee law a *careful* real estate secured lender promptly records a deed of trust. Failure to act expeditiously exposes the lender to the fate of "any other purchaser who withholds his deed from registration." *McCoy v. Hight,* 39 S.W.2d at 272. Had Countrywide recorded on November 12, 1993, or at any time before November 17, 1993, it might claim the higher ground of the creditor in *Pitman.*

### III.

■ Because it eventually retired the debtors' note to Boatmen, Countrywide asserts subrogation to Boatman's prior (released) deed of trust.

The Supreme Court of Tennessee rejected a similar argument in *McCoy v. Hight,* 39 S.W.2d at 272. In *McCoy,* a warranty deed was executed on August 20, 1928. The grantees, at the request of the grantor, paid a portion of the purchase price to the grantor's mortgagee. On September 1, 1928, the grantees recorded their deed. The grantor's mortgagee released its mortgage.

Between execution and recordation, on August 27, 1928, a creditor of the grantor attached the property. Under Tennessee law the unrecorded warranty deed was null and void as to the attaching creditor. Grasping at equity, the grantee pleaded subrogation. That plea was rejected by the Tennessee Supreme Court:

> The doctrine of subrogation has no application to such facts as this record presents. Generally speaking, it may be said that the

rule may be invoked when a person through fraud or mistake pays the debt of another. As was pointed out in *Dixon v. Morgan,* 154 Tenn. 398, 285 S.W. 558, it is to prevent fraud and relieve against mistakes that equity assumes jurisdiction to administer relief by subrogation. In the cause under consideration, the [grantees] did not pay the debt of another; *neither did they make payment as a result of any fraud or mistake.* They were cognizant of all the facts, paid the agreed consideration, and received that for which they bargained. There were no other claims or liens against this property. *Their situation is not different from that of any other purchaser who withholds his deed from registration.* They simply took a chance that a creditor of their vendor would not levy an attachment or an execution on the property. Under our registration laws a deed is not effectual against creditors, even with actual notice of the unregistered instrument, until placed of record. [citations omitted.]

> \*     \*     \*

> To grant [grantees] the relief which they seek would be to ignore and violate [the] statute. The mere fact that [grantor], out of the proceeds of sale, discharged an existing lien does not in any wise alter the situation. The cause in its final analysis is one where the purchasers paid for and acquired good title to the lot, but by neglecting to record their deed, made it possible for a creditor of their vendor to fasten a lien upon it. In these circumstances the statute provides that the attaching creditor has superior claim to the land.

*McCoy,* 39 S.W.2d at 272 (emphasis added).

The cases cited by Countrywide are not persuasive of departure from *McCoy.* In *Walker v. Walker,* 138 Tenn. 679, 200 S.W.

---

4. Countrywide first attempted to record its mortgage by mailing its documents on November 17, 1993. The Registrar's Office returned this attempted filing because the check tendered by Countrywide for recording costs was in the wrong amount. This failed attempt to register the deed confers no sympathy under Tennessee law. *See Bank v. McCarty,* 99 Tenn. 469, 42 S.W. 4 (1897) (Re-registration of defectively recorded instrument will not relate back so as to give it a

preference over a judgment lien attaching in the interim.); *Southern Bldg. & Loan Ass'n v. Rodgers,* 104 Tenn. 437, 58 S.W. 234 (1900) (accord). *See also In re Anderson,* 30 B.R. at 1008 (improper acknowledgement cannot be cured by correction and re-recordation such that an intervening creditor will stand behind a deed filed improperly at the time a creditor's judgment was perfected).

825 (1918), the party seeking subrogation had satisfied a mortgage believing she owned the encumbered property. That belief was mistaken. The court held that mistake of fact was a ground for equitable relief upon payment of the debt of another. The equities weighed similarly in *Milam v. Milam*, 138 Tenn. 686, 200 S.W. 826 (1918). There a women loaned money to her son and daughter in law for the purchase of a home. It was the intent of the parties that repayment of the loan be secured by the property. Upon the death of the daughter in law, the grandchildren sought to avoid repayment on the ground that the unrecorded lien was unenforceable. The court disagreed, observing that, while not enforceable against a creditor of the borrower, the attempted transaction was enforceable as between the parties.

Here, the equities do not support Countrywide's subrogation to Boatmen's lien. There was no mistake made—Countrywide purposefully did not require an assignment of Boatman's deed of trust as part of its refinancing of the debtors' obligation to Boatman's; Countrywide knowingly and for its own business reasons took the chance that a creditor of its mortgagor would levy on the property before Countrywide recorded its deed of trust. Fraud was not alleged. Like the grantees in *McCoy*, Countrywide was the architect of its own misfortune. To grant the equitable relief sought by Countrywide would be contrary to Tennessee law.

An appropriate order will be entered.

### ORDER

For the reasons stated in the memorandum contemporaneously filed herewith, IT IS ORDERED, ADJUDGED and DECREED that summary judgment is granted to the trustee.

IT IS SO ORDERED.