## CARL v. WOLCOTT.

(Court of Civil Appeals of Texas. El Paso. April 3, 1913. Rehearing Denied April 24, 1913.)

1. BROKERS (§ 85*) — ACTIONS FOR COMMISSIONS—PLEADING—ISSUES.

Under allegations in the answer, in an action for commissions for procuring the sale of realty, that if plaintiff was instrumental in effecting the sale his services were purely voluntary and without promise of compensation, evidence was admissible that plaintiff and defendant were closely related so as to raise a presumption that the services were gratuitous.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. §§ 106–115; Dec. Dig. § 85.*]

2. BROKERS (§ 82*) — ACTIONS FOR COMMISSIONS — PLEADING — GENERAL DENIAL — SCOPE.

Under the general denial in an action for broker's commissions, defendant could show, in the absence of express objection, that he and plaintiff were closely related so as to raise a presumption that plaintiff's services were gratuitous.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. §§ 101–103; Dec. Dig. § 82.*]

3. TRIAL (§ 295*) — INSTRUCTIONS — CONSTRUING AS WHOLE.

Instructions should be construed as a whole.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 703–717; Dec. Dig. § 295.*]

4. BROKERS (§ 88*) — ACTIONS FOR COMMISSIONS — INSTRUCTIONS — NATURE OF CONTRACT.

The court instructed, in an action for broker's commissions, that one of the essentials of a contract is the meeting of minds by an offer and an acceptance, and that that element must be present in an implied as well as in an express contract, and if absent no obligation is created, and if there was no meeting of the minds of plaintiff and defendant that plaintiff should sell the property and defendant would pay a commission to plaintiff for making a sale, his efforts to sell would be voluntary, and he could not recover anything of defendant though

he found a purchaser, and that if the commission for making the sale was not particularly stated, if plaintiff's services were in fact requested, compensation would be presumed unless the agreement was between near relatives, when the law required an express promise to pay, though the amount might not be stated. *Held*, that the charge was not erroneous on the ground that the part thereof relating to an implied contract conflicted with the part relating to an express contract.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. §§ 121, 123–130; Dec. Dig. § 88.*]

5. APPEAL AND ERROR (§ 1033*)—HARMLESS ERROR—INSTRUCTIONS.

Where, under the evidence in an action for a broker's commissions, the court could have charged that there was no evidence of an implied contract, an instruction submitting the question of implied contract was unduly burdensome upon defendant, and hence not prejudicial as to plaintiff.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4052–4062; Dec. Dig. § 1033.*]

6. BROKERS (§ 86*) — ACTIONS FOR COMMISSIONS—SUFFICIENCY OF EVIDENCE.

Evidence, in an action for broker's commissions, *held* not to show an implied contract to pay commissions.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. §§ 116–120; Dec. Dig. § 86.*]

7. TRIAL (§ 207*)—RECEPTION OF EVIDENCE—PURPOSE.

Where evidence, admissible on one issue, is liable to be improperly considered on another issue, the court should limit its effect, so that where, in a broker's action for commissions, a receipt admitted for one purpose did not tend to show that plaintiff was employed by defendant as claimed, the court properly instructed that it could not be considered for that purpose.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 498, 499, 501; Dec. Dig. § 207.*]

8. TRIAL (§ 260*)—INSTRUCTIONS—REQUESTS—INSTRUCTIONS ALREADY GIVEN.

A requested charge, in an action for a broker's commissions for procuring the sale of realty, that it was not necessary that the purchaser be introduced to the owner by the broker if he induced the purchaser to apply to the owner to purchase the property, was sufficiently covered by a charge that, if plaintiff's services were the efficient procuring cause of the sale, the jury should find for plaintiff, and hence was properly refused.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 651–659; Dec. Dig. § 260.*]

9. WITNESSES (§ 379*)—INCONSISTENT STATEMENTS—ACTIONS FOR COMMISSIONS—ADMISSION OF EVIDENCE.

Where, in an action for commissions for procuring the sale of realty, the purchaser testified that he and plaintiff went to the office of defendant's agent, and that plaintiff put him in touch with the property and was instrumental in closing the deal, evidence was admissible by defendant's agent that the purchaser told him that plaintiff had nothing to do with the sale.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 1209, 1220–1222, 1247–1256; Dec. Dig. § 379.*]

10. BROKERS (§ 85*) — ACTIONS FOR COMMISSIONS—ADMISSION OF EVIDENCE.

Where, in an action for commissions for procuring the sale of realty, it was in issue whether plaintiff was authorized to sell and whether the purchaser closed the deal through plaintiff, a copy of an earnest money receipt given by defendant's agent to the purchaser was admissible in evidence on the question of plaintiff's authority, though not signed by the purchaser.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. §§ 106–115; Dec. Dig. § 85.*]

11. WITNESSES (§ 406*)—CONTRADICTION—ADMISSIBILITY.

In an action for commissions for procuring the sale of realty, a copy of an earnest money receipt given by defendant's agent to the purchaser was admissible to contradict the purchaser's evidence that he bought the property through plaintiff.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 1276–1279; Dec. Dig. § 406.*]

Appeal from District Court, El Paso County; A. M. Walthall, Judge.

Suit by W. N. Carl against Lennie Moor Wolcott. From a judgment for defendant, plaintiff appeals. Affirmed.

Jones & Jones, of El Paso, for appellant. Lewis Maury Kemp and R. T. Neill, both of El Paso, for appellee.

HARPER, J. This suit was brought by W. N. Carl, appellant, against Mrs. Lennie Moor Wolcott, appellee, to recover a commission for the sale of certain real estate, belonging to appellee, by appellant, real estate agent. He alleged: That he was a real estate agent and broker, doing business as such in El Paso, Tex. That Mrs. L. M. Wolcott, as the owner of southwest corner of block 38, Mills' map of El Paso, listed same with him as a real estate agent and broker for sale, and employed him to sell same for $39,000, and contracted and agreed to pay him 5 per cent. on the gross price as commission for making the sale. That he sought and found a purchaser in Charles R. Loomis, who was able, ready, and willing to purchase said property; and that said Loomis thereafter entered into a binding contract with plaintiff, who was acting as agent of defendant, to purchase said property upon the terms designated by defendant, and paid down $1,000 as earnest money to bind the contract. That the sale was made by defendant to the said Loomis and J. M. Goggin, who joined Loomis in the purchase after the execution of the contract. That by reason of said sale defendant thereby became indebted to plaintiff for said commission in the sum of $1,950 and failed and refused to pay same, etc. By a second count plaintiff alleged that, if he should be mistaken as to an express contract of employment by the defendant with plaintiff to sell, then he avers that defendant listed her said property with plaintiff for sale and authorized and requested him to sell same, or, in any event, knew that he was seeking customers to purchase said property. Further alleged that he, at the request and with the knowledge, approval, and consent of defendant, and with knowledge, approval, and consent of Maury Kemp, defendant's duly authorized agent, sought customers to purchase said property during the fall of

1909, and procured Charles R. Loomis to purchase same, and that defendant in person and through her agent and attorney aforesaid, accepted the said customer and closed the sale, and thereby accepted plaintiff's services and thereby ratified his acts as a real estate agent done and performed for her, and thereby became liable and bound to pay the reasonable and customary commission to real estate agents in El Paso, which he alleged is 5 per cent. Defendant answered by general denial; that plaintiff's services were rendered voluntarily, and a denial, under oath, of the execution by her of the contract of sale dated November 27, 1909. And specially answered that, if plaintiff was instrumental in effecting the sale, such acts were purely voluntary, without authority from defendant, and without promise of compensation. Tried by jury, and verdict for defendant, from which this appeal is perfected.

The appellant's first assignment of error complains of the following clause of the fourth paragraph of the charge of the court: " 'One of the essential elements of a contract is an agreement or meeting of the minds of the parties by an offer on the one hand and an acceptance on the other. This necessary element must be present in an implied contract as well as in an expressed contract. If it is absent in either no obligation is created, and if there was no meeting of the minds of the plaintiff and the defendant, that the plaintiff should sell the property and the defendant would pay a commission to plaintiff for making a sale, his efforts to sell said property would be voluntary, and in that event the defendant would owe plaintiff nothing, though he might have found a purchaser ready, willing, and able to buy. In this connection you are instructed that if the commission for making said sale was not particularly stated or referred to, if the services of the plaintiff in making said sale was requested by the defendant, compensation will be presumed unless the agreement is between near relatives, when the law requires an express promise to pay, although the amount may not be stated.' Because in the first part of said clause the court attempts to define an implied contract, while in the second part thereof the court tells the jury that the contract must be express when between near relatives, when there was no evidence that plaintiff and defendant were near relatives nor was there any pleading by defendant to that effect, and on the contrary the evidence showed that no such relation existed within the meaning of the law, and said clause was therefore confusing, conflicting, and contrary to the law in such cases, and was not in conformity with the pleadings of plaintiff nor with the evidence adduced thereunder."

The first proposition under this assignment is that it submits an issue to the jury not raised by the pleadings and evidence, and,

following up the proposition, suggests that the question of "near relationship between the parties" had not been pleaded.

[1] It is admitted that it was not pleaded specifically, so the question is: Was it necessary for defendant to plead it specially in order to take advantage of the point as a proposition of law, or could the appellee take advantage of it under her general denial or under any other paragraph of her answer? For it is unquestioned that the proposition of law stated is good, and it follows that if the pleading and proof do not raise the question the error is fatal and should reverse this case. It is admitted that the evidence raises the question, plaintiff and defendant both having testified, without objection, that at the time of the sale of the property they were related by marriage, the plaintiff being then married to defendant's sister. The defendant pleaded "that if plaintiff was instrumental in effecting the sale his services were purely voluntary and without promise of compensation," under the evidence adduced on the part of plaintiff, the fact that defendant was in his office and expressed a desire to sell the property, and the other things testified to by plaintiff as having occurred, if they had not been related, and had not she been accompanied by her mother and sister, then the wife of plaintiff—in other words, if it had been a business call for the purpose of putting the property on the market, by one not related— would have been strong evidence that he was then authorized to make the sale, although there was no express authorization of plaintiff. But under the facts of this case and the pleading of defendant there is nothing shown more than a voluntary offer to assist his then sister-in-law, and we find that the above answer is sufficient to raise the question and to admit evidence, and the evidence was sufficient to require the court to charge the jury as was done.

[2] And if not raised by the pleading, the general denial, in the absence of express objection to the testimony when offered, was sufficient to enable the defendant to avail herself of this legal qualification or limitation upon the probative force of facts which otherwise might have been sufficient to establish that defendant listed the property with plaintiff and an implied agreement to pay commissions. But this was a question for the jury, and the view we take of it was sufficiently raised by the pleading.

[3, 4] Second proposition under the first assignment of error and the third assignment of error are that, where a paragraph of the charge of a court is material but inconsistent, the first clause conflicting with the latter, it has a tendency to confuse and mislead the jury, and is therefore erroneous. Following this proposition, appellant in his brief copies two paragraphs of the court's charge, but in no way attempts to indicate

by any argument what the conflict in the "clauses" consists of. The best we can make of the proposition is that the portion of the court's charge first quoted is upon the question of what constitutes "implied contract," and the part next quoted groups the facts and submits the question of express contract as well as implied contract to the jury. If this is the "conflict" referred to, the proposition is not well taken, because the charge must be construed as a whole, and the court's charge so considered is not subject to the criticism made. The first assignment of error is therefore overruled.

What we have said above disposes of the second assignment of error, because it is addressed to the same proposition.

[5] The fourth and fifth assignments of error complain of the second clause of the fourth paragraph of the charge, because "to constitute an implied contract in this case it was not necessary that defendant should list her property with plaintiff for sale; it was sufficient if the defendant, by her acts and conduct, induced the plaintiff to find a customer for her property and avail herself of plaintiff's services by accepting the purchaser found by him, and a charge on an implied contract requiring a listing casts too great a burden on plaintiff."

Under the facts in the record the court would have been authorized to charge the jury that there was no evidence of an implied contract, and the charge complained of was more onerous upon the defendant than it should have been.

The only testimony in the record which in any way tends to show that Carl was authorized to act as agent for Mrs. Wolcott in effecting the sale of her property shows that he was expressly authorized, if at all. The plaintiff and his witness, Gray, testify of the incipient conversation between plaintiff and defendant by which he claims to have been authorized to act as agent for a commission, as follows: Plaintiff: "Mrs. Wolcott came into my office about the 16th or 17th of October, 1909, and listed her property on Overland and Stanton streets for sale, saying to me 'that she wanted to sell the property, and that she wanted $600 a front foot,' and said that she would pay 5 per cent. commission out of the gross proceeds, and for me to get busy and sell it. That she wanted to buy an automobile, and that I would have to see Mr. Maury Kemp for terms. I phoned her next day and she said one-third cash and the balance in two and three years." Gray testified: "I remember Mrs. Wolcott coming into the office to see Mr. Carl, and on that occasion heard her state that she had decided to sell her property, and told him to get busy and sell it." But there is no contention that the sale was made according to the terms given at that time, but that in November plaintiff found a buyer in Loomis, if price and terms satis-

factory. Carl then went to see Mr. Kemp, who he says he knew represented Mrs. Wolcott in her business, and he testifies that the following conversation occurred: "I asked him (Kemp) the lowest price the property could be bought for, and he said $39,000. I asked him if that was the gross price, and he said yes, and I asked him further if he would pay 5 per cent. commission on that price, and he said yes. And I then asked him for terms, and he said one-third cash and the balance in one, two, and three years."

[6] It certainly cannot be contended that there is anything left for implication in these conversations, for he was expressly authorized to sell, and an express offer to pay in each instance a commission of 5 per cent. if he made the sale; and there is no other evidence in the record which could be construed into a contract, either express or implied. So if the court's charge is subject to the construction contended for, "that it required the jury to believe that the property was listed with plaintiff," it required no more than the plaintiff's evidence asserted, and no more than he pleaded, but which the jury did not see fit to believe. This disposes of the seventh, thirteenth, and fourteenth assignments.

The sixth assignment complains of the action of the court in giving, at the request of defendant, the following special charge: "The court erred in giving defendant's special charge No. 1 asked by the defendant, because said special charge told the jury that the earnest money receipt introduced by the plaintiff was not admitted as evidence and proof that the plaintiff had been employed by defendant, and told the jury they would not consider it as evidence that defendant had employed plaintiff Carl to sell the property, because by said special charge of the defendant the court undertook to define the force and effect of said earnest money receipt as evidence, but failed to tell the jury that it should be considered by them together with all other facts and circumstances in the case, thus rendering said special charge a comment upon the weight of the evidence and practically excluding the same as evidence from the consideration of the jury. That said special charge, as given by the court, had a tendency to mislead the jury and cause them to believe that said earnest money receipt was eliminated as an item of evidence in the case."

[7] In Missouri, K. & T. Railway Co. v. Collins, 15 Tex. Civ. App. 21, 39 S. W. 150, the court says: "Where evidence admitted is proper on one issue, but is liable to be considered by the jury on another issue as to which it is incompetent, the court should instruct that it is not to be considered on the latter issue, but should not direct attention to the issue on which it may be considered, which might give it undue weight

with the jury." The earnest money receipt did not tend to prove that Carl was employed by defendant; therefore the court did not err in limiting its probative force to that extent.

[8] The appellant's eighth assignment assigns error in the refusal of the court to give the following special charge requested by him: "Where property has been listed with a broker for sale or authority given the broker by his owner or his duly authorized agent to sell the same, and the broker effects such sale, that is, he has brought the parties together or has made a contract with the purchaser which the owner can legally enforce and within the terms authorized by the owner or his agent, he is the efficient cause, and the fact that the owner negotiates the sale with the purchaser procured by the broker does not affect his right to commission. And in this case you are instructed that the contract introduced in evidence by the plaintiff and signed by Chas. R. Loomis, which contract, if it was procured by the plaintiff from said Loomis, was sufficient to bind said Loomis as the purchaser of the property therein described and one which the defendant could have legally enforced. If therefore you believe and find from the evidence that the defendant listed said property with plaintiff for sale, or that she authorized and requested him to sell the same for her, either in person or through her agent or attorney, and that in pursuance to her listing and authority to plaintiff to sell said property, the plaintiff found said purchaser, Loomis, and obtained said contract, and that thereafter the defendant, acting by and through her attorney, Maury Kemp, proceeded to complete the terms of said sale and close said sale to said Loomis, then and in that event the plaintiff is entitled to his commission for services rendered in said sale and you will so find."

The court did not err in refusing to submit this special charge, because it contained matter which it would have been improper to submit; and, besides, the essentials of it were given in the general charge of the court.

Appellant's ninth and tenth assignments of error are as follows:

Ninth assignment of error: "The trial court erred in refusing to give plaintiff's special charge No. 3, which told the jury that it was not necessary that the purchaser be introduced to the owner by the broker, so long as the purchaser is induced through the broker to apply to the owner to purchase his property, which the broker is offering to sell. And said special charge should have been given in view of the evidence that plaintiff found Charles R. Loomis, the purchaser of defendant's property, and sent or directed said Loomis to defendant's attorney to negotiate with him with reference to the purchase of said property, and the evidence showed that said attorney of defendant, who was authorized to act for her, closed the sale of said property to said Loomis."

Tenth assignment of error: "The trial court erred in refusing to give plaintiff's special charge No. 4, because the evidence showed that plaintiff found a purchaser in the person of Charles R. Loomis, and that thereafter the sale was closed by the attorney for the defendant with the said Loomis, who was the customer of the plaintiff."

The court charged the jury "that, if the services of the plaintiff were the efficient procuring cause of the sale to said Loomis, you will find for the plaintiff," which includes all the essentials of the special charge requested, so it was not error to refuse same.

[9] The eleventh assignment complains of the action of the trial court on permitting witness Kemp to testify as shown in the following bill of exceptions: "Witness Maury Kemp, being on the stand as a witness for the defendant and testifying in her behalf, was asked the following question by counsel for defendant: Q. Mr. Kemp, relative to the sale of this property to Carl and Loomis, state who represented Mrs. Wolcott. A. I represented her. Q. What, if anything, was said between you and Mr. Loomis relative to the part Carl played in it? Whereupon counsel for the plaintiff objected because anything that Loomis might have said not in the presence of Carl would not be binding upon him. Thereupon counsel for the defendant asked the following question: Q. What did Mr. Loomis say in reference to whether or not he had been induced to purchase by Mr. Carl? Whereupon counsel for the plaintiff objected because what Mr. Loomis might have said as to being induced to purchase under the state of the pleadings would not bind Mr. Carl, and because anything Mr. Loomis might have said to the witness in reference to being persuaded by Mr. Carl calls for a conclusion of the witness and would not be binding upon Carl in his absence. Which objection was by the court overruled, to which action of the court the plaintiff then and there in open court excepted, and the witness was permitted to testify as follows: A. He said this: Mr. Carl had nothing to do with his purchasing the property. I told Mr. Loomis about what Mr. Clifford told me about Mr. Carl wanting to take his part of the commission out in groceries. I could not understand what Mr. Carl was asking for a commission from Mr. Clifford for in groceries. I reminded Mr. Loomis of the fact that he had told me that he and Carl were in on the deal and going to sell Clifford, and they could make so much money if I would authorize it. Loomis said that Carl had nothing on earth to do with this particular deal; that was consummated by the earnest money receipt of December 24th; and Mr. Loomis called attention at that time to the fact that this other proposition was nothing more than an effort on the part of

him on his and Mr. Carl's part to go in and sell the property to Mr. Clifford and make a commission." Because "under the state of the pleadings and the evidence it was error for the court to permit witness Kemp to testify that the purchaser Loomis told him that the plaintiff Carl had nothing to do with making said sale."

The plaintiff alleged in his petition that Kemp was the agent and attorney of defendant, and that he acted under his (Kemp's) specific directions; and that he closed the deal, taking earnest money, and gave a receipt, etc., to Loomis. Loomis testified that he and Carl went to Kemp's office two or three times; that Carl put him in touch with the property, and was instrumental in closing the transaction. It was admissible, if for no other, for the purpose of contradicting this and other testimony of plaintiff's own witness, Loomis.

[10] Appellant's twelfth assignment is as follows:

"The trial court erred in admitting a purported copy of an earnest money receipt, purporting to have been given by witness Maury Kemp to Charles R. Loomis, dated the 24th day of December, 1909, for the reason that said purported receipt was not signed by said Loomis as the purchaser, was self-serving, and was equivalent to a self-serving declaration on the part of the defendant and said Kemp, and was not evidence that plaintiff had not procured said Loomis to purchase said property and had a tendency to mislead the jury." Because "an earnest money receipt not signed by the purchaser, but signed only by the defendant or her agent and attorney, offered in evidence on the trial of a suit for commissions for the sale of defendant's real estate, where the evidence showed that the plaintiff broker had secured the signature of the purchaser to an earnest money receipt, and that the purchaser closed the sale thereunder, is a self-serving declaration and hearsay and its admission by the court was error."

"Witness Maury Kemp being on the stand and testifying in behalf of the defendant, the counsel for defendant asked the following question: Q. At the time that deal was closed, state what was done relative to accepting a purchaser found by Mr. Carl. To which question the plaintiff by his counsel objected because the question was suggestive and called for a conclusion of the witness, when the jury was entitled to all the facts. The Court: Do you mean at the time it was closed, at the time of the execution of the deed? Mr. Neill: Yes, sir; I don't precisely mean that, because the deed was executed in Houston; I mean in so far as Mr. Kemp is concerned; that is really what I mean. The Court: That is the circumstance you refer to? Mr. Neill: Yes, sir. The Court: Overrule the objection. And the wit-

ness was permitted to testify that nothing was done by the purchaser found by Carl; that Mr. Carl never found a purchaser. Q. That is the answer as you give it now? A. Yes, sir. Q. Have you a carbon copy of the receipt? A. Yes, sir. Q. Do you recall testimony of Mr. Loomis to-day, this morning, relative to whether or not you gave him the receipt? A. Yes, sir. Q. Did you or not give him such a receipt? A. I gave him a receipt. Q. Have you a copy of it? A. I have; he gave me the $1,000. Q. Is this the receipt? A. He paid that just before Christmas. Thereupon the receipt was offered by counsel for the defendant in evidence, whereupon plaintiff by his counsel objected for the following reasons: Because the tendency of it is to defeat the negotiations, is to defeat the plaintiff in his commission. The present state of the evidence shows that a purchaser was found and negotiations started on the 27th day of November; the receipt is not signed by Mr. Loomis at all. Q. About the $1,000, he has not denied that fact? Mr. Jones: He paid $1,000 on the 27th of November? A. No. He brought me $1,000 on the day of this receipt; it is not the $1,000 he paid into the Rio Grande Valley Bank. The court overruled the objection, and thereupon counsel for the plaintiff objected on the further ground that the receipt was not a receipt to Mr. Loomis, was simply a purported copy of a receipt; that it is not a binding receipt of sale; it is a receipt for money received on a transaction, but is simply a copy, or purports to have been given to Mr. Loomis."

[11] A sufficient answer to the reason assigned for the objection is that it was a material inquiry in this case as to whether Carl was authorized as agent to sell to any one, and as to whether Loomis, in fact, bought or closed the deal with him, and the testimony and receipt were admissible upon these questions, and upon the further question of defendant's contention that she nor her agent, Kemp, ever recognized Carl as defendant's agent, and to contradict the witness Loomis in his testimony that he bought the property through Carl.

No error appearing in the record, the judgment of the lower court is affirmed.