# GOODWIN v. GOODWIN et al. — 260 S. W. (2d) 186.

Middle Section. January 16, 1953.

Petition for Certiorari denied by Supreme Court, June 5, 1953.

K. Harlan Dodson, Jr., of Nashville, and George Yost, of Springfield, for appellant.

James L. Bass, of Nashville, for appellees.

FELTS, J.  In 1949, S. H. Goodwin owned a tract of 38 acres of land, on which he and his wife, Pearly E. Goodwin, were living.  He was 77, she 68 years of age, and he had become unable to work.  By deed dated August 27, 1949, they conveyed the remainder interest in this land, subject to a life estate reserved for each of them, to his son, O. B. Goodwin, and the latter's wife, Nettie Wade Goodwin, for a recited consideration of $3000 paid and an agreement by the grantees to support the grantors the rest of their lives, should they become unable to support themselves.

On September 23, 1949, the grantors and the grantees made a mortgage trust deed to W. H. Haynes, Trustee, to secure a loan of $3,750 made by the Third National Company to O. B. Goodwin and his wife, Nettie Wade Goodwin, and evidenced by a note signed by these two for that amount.  The proceeds of this loan were used, under supervision of the trustee to finish the house on the land and make it habitable for this aged couple.

When the deed was made O. B. Goodwin took charge of the farm, managed it, rented the land, and collected the income therefrom.  With this income, supplemented by funds of his own, he provided for the support and maintenance of S. H. Goodwin and Pearly E. Goodwin until S. H. Goodwin died on April 15, 1951.  Mrs. Pearly E. Goodwin then went to Simpson County, Kentucky, to live with one of her daughters.

She later filed the bill herein and alleged that as life tenant of the land she was entitled to the possession of.

it and to the rents and profits received by O. B. Goodwin after April 15, 1951; that O. B. Goodwin and Nettie Goodwin had breached their contract to support her and were liable to her for $100 per month, or $400 accrued, and $12,000 to accrue according to her life expectancy of ten years; that she was entitled to recover a refrigerator, a farm truck, and some chickens, or $450 as the reasonable value thereof.

She accordingly prayed for a decree for the immediate and exclusive possession of the land, for a recovery of the amounts above stated, and that such recovery be declared a lien on the remainder interest in the 38 acres and that if not paid said land be sold and the proceeds applied to payment of same.

The mortgagee and the trustee filed a formal answer. O. B. Goodwin and Nettie Goodwin filed answers denying the material averments of the bill; and O. B. Goodwin averred that under the deed the contract of the grantees was to support complainant on the land and out of its proceeds, just as they had done during the lifetime of S. H. Goodwin; that they were willing to keep on doing this and had offered to maintain a home and support complainant on the land but that she had refused their offer.

The cause was heard before the Honorable Albert W. Stockell, Special Chancellor, according to the forms of chancery upon the testimony of witnesses introduced in open court. He filed an opinion setting forth his findings of fact and conclusions of law. He found that complainant was not entitled to recover the truck, refrigerator, or the chickens.

He further found that it was contemplated by the parties to the deed that the duty of the grantees to support S. H. Goodwin and his wife would be discharged on the

farm, through the operation of the farm; that the money borrowed on the farm was for that purpose; that if not permitted to operate the farm O. B. Goodwin could not repay the loan or discharge this duty of support.

And on the authority of Conner v. Marshall, 58 Tenn. 706, he held that the grantees owed no duty to support complainant elsewhere than on the farm by operation of it, as they had been supporting her; that the grantees had not breached their contract; but that complainant had, without just cause, refused their offer to continue to support her on the farm; that she thus violated the maxim, "He who seeks equity must do equity"; and the court should not grant her any relief. He accordingly entered a decree dismissing her bill.

Complainant appealed and insists that the deed vested her with a life estate in the land and she was therefore entitled to the immediate and exclusive possession of it; that the grantees were bound by a contract to furnish her the necessities of life and she was entitled to a money judgment for their breach of this obligation; and that she was entitled to recover the truck, refrigerator, and chickens, or the reasonable value of them.

There is little or no dispute as to the facts. As stated, S. H. Goodwin owned this small tract of land and lived thereon. He was married twice. His first wife, mother of his son, O. B. Goodwin, had died some years before. She was a sister of complainant who had eight children by her first marriage, and her husband had died. She and S. H. Goodwin were married in July, 1949, about a month before they made the deed to O. B. Goodwin and his wife.

They were both old and he had become unable to support her or himself. He had been unable to finish the house and it needed additions or repairs to make it so

that they could live in it in comfort. So they agreed to deed the land, subject to a life estate reserved for each of them, to O. B Goodwin and his wife Nettie Wade Goodwin; that he would borrow $3,750 to repair and finish the house, and all of them would join in a mortgage on the land to secure the loan; and that O. B. Goodwin would take charge of the land and operate it and thereby support his father and stepmother.

That this was the agreement and family arrangement was shown by the testimony of complainant herself. After being asked about the conversations they had about deeding the land to O. B. Goodwin and his wife, complainant testified as follows:

"Q. Well, it was mutually understood what you were going to do, wasn't it? A. Oh, yes sir. Yes sir, it was understood that he was to take the farm over and take care of us.

"Q. Take the farm over and take care of you? A. Yes sir.

"Q. But you were willing to do that, at the time, weren't you? A. Well, yes sir."

The deed did not contain the whole of this agreement, but such agreement rested in parol. The deed recited a consideration of $3,000 paid by the grantees and a further consideration that they would support the grantors for life should the grantors become unable to support themselves. It was shown without dispute that the recited consideration of $3,000 was not paid and that the real consideration was this parol agreement above stated, no part of which was put into the deed except the stipulation that the grantees would support the grantors.

The deed was in usual form of a warranty deed and conveyed the remainder interest in the land, subject to a life estate reserved for the grantors. It also conveyed

to the grantees "all right, title, and interest that said grantors have in and to the farming equipment and tools on the premises."

Pursuant to the oral agreement above stated, O. B. Goodwin obtained a loan of $3,750, and he and his wife signed a note therefor; and all the parties, grantors and grantees, joined in a mortgage trust deed conveying the land to secure this loan. The proceeds of this loan were spent in repairing and improving the house in which the grantors were living.

O. B. Goodwin took charge of the land and managed it, having it cultivated or renting it to tenants or share-croppers. He paid the taxes, insurance premiums, and interest on the mortgage debt. He has also been paying $100 per quarter, or $400 per year, on the principal of this debt, as provided in the mortgage. Through the operation of the farm, with the income therefrom, supplemented by his own income from the operation of a restaurant at another place, he maintained and supported the grantors until his father died on April 15, 1951.

On the next day complainant went to visit her daughter in Kentucky, and a few days later she came back with a truck and moved all her belongings to the home of her daughter in Kentucky. O. B. Goodwin told her that he would support and maintain her in the home on this land, just as he had been doing, or that she could come and live in the home with him and his wife. Complainant does not deny this and does not claim that they were not kind and good to her. She naturally preferred to live with her daughter.

It is true, as contended by complainant, that she is vested with a life estate in this land. While it belonged exclusively to her husband, their deed, conveying the remainder, reserved a life estate for both of them, and

this reservation operated as a conveyance of a life estate to her, which upon her survival of her husband, inured to her sole benefit as life tenant. McRoberts v. Copeland, 85 Tenn. 211, 2 S. W. 33; Spicer v. Kimes, 25 Tenn. App. 247, 253, 156 S. W. 334.

It is likewise true that complainant, being unable to support herself, is entitled to be supported by the grantees, O. B. Goodwin and wife. But we think she is not entitled to require them to support her at any place she may choose to live. We agree with the Special Chancellor that it was the intention and agreement of the parties that the grantees would furnish such support on the farm by means of operating the farm; that is, they were to borrow the money, fix up the house for the grantors, take charge of the farm, operate it, and thereby obtain the means of supporting the grantors.

Under circumstances not materially different from those here appearing, it was held in Conner v. Marshall, 58 Tenn. 706, that the grantee was bound to support the grantor so long as the grantor lived with him, but could not be required to support the grantor at any other place he might choose to live, it appearing that the grantee had offered to support him on the land and had not been guilty of any improper treatment or given him any cause to leave.

Complainant, however, insists that evidence as to the parol agreement of the parties was not admissible, and could not be heard, to vary the deed or change its effect as a conveyance of a life estate to her, or to change any of the terms of the deed, or to establish any independent or collateral agreement in conflict with the written instrument. McGannon v. Farrell, 141 Tenn. 631, 214 S. W. 432; Litterer v. Wright, 151 Tenn. 210, 268 S. W. 624.

■ But such parol evidence was admissible to show the consideration for the deed, to set up an independent or collateral agreement not in conflict with the written instrument where such instrument did not purport to embody the whole agreement of the parties, and to show the course of dealings and the circumstances in which the contract was made, as proper matters to be looked to in arriving at their intention. Whitby v. Whitby, 36 Tenn. 473, 478; Perry v. Cent. Southern Railroad Co., 45 Tenn. 138, 143; McGannon v. Farrell, supra; Hibernia Bank & Trust Co. v. Boyd, 164 Tenn. 376, 382, 48 S. W. (2d) 1084; Jeffers v. Hawn, 186 Tenn. 530, 535, 212 S. W. (2d) 368.

We think the parol evidence of the agreement and family arrangement of the parties was admissible because it was the real consideration for the deed, because the deed did not purport to include the whole of the agreement, and because such parol evidence did not vary or contradict the deed but set up independent and collateral matters showing the circumstances under which the deed was made and the intention of the parties.

■ ■ We concur with the Chancellor's findings that complainant did not prove her title or right to recover the farm truck, the refrigerator, or the chickens. We think the truck passed under the deed as part of "the farming equipment and tools on the premises." O. B. Goodwin had bought the refrigerator and placed it in the home for his mother where he had allowed it to remain for use of his father and stepmother. The weight of the proof is that the grantees brought chickens to the place and there was nothing to identify any chickens as belonging to complainant. She evidently did not claim the chickens, because when she moved her things she did not take them.

■ We also agree with the Chancellor that complainant should not now be allowed to abandon the family arrangement, take possession of the land, and call on the grantees to support her elsewhere than on the farm. Upon the faith of that arrangement, the grantees borrowed $3,750 and expended it in rebuilding the house and enhancing the value of the life estate. They have also paid the taxes, interest, and insurance, which would ordinarily have to be paid by the life tenant, and have been regularly reducing the principal of the mortgage debt, thereby protecting the life estate from foreclosure sale.

■ It would be unjust and inequitable for her to repudiate this arrangement, keep all the benefits of it, take possession from the grantees, and at the same time call on them to support her wherever she lived. Moreover, it appears the grantees, if deprived of the possession of the land and the proceeds therefrom, could not support complainant and keep down the charges and liens and protect the land from foreclosure. He that seeks equity must do equity. Gibson's Suits in Chancery, 3 Ed., sec. 39. In the circumstances of this case, we think a court of equity could decree no relief to complainant.

The decree of the Chancellor is affirmed and the costs of the appeal are adjudged against complainant and the sureties on her cost bond.

Howell and Hickerson, JJ., concur.

## On Petition for Rehearing

Mrs. Pearly E. Goodwin has filed a petition to rehear. Pointing out that we held that she took a life estate in the land, she contends that she should be decreed possession of the same.

In our opinion we pointed out that the consideration for the deed reserving to her a life estate was the family arrangement under which defendants borrowed $3,750 and expended it on the land, enhancing the value of the life estate, and were repaying this loan together with taxes and insurance. We also expressed the view that it would be unjust and inequitable to permit her to repudiate this arrangement and to take possession of the land thus enhanced, without offering to do equity—making just compensation for the benefits received; and we held that she should be denied relief under the maxim that he who seeks equity must do equity.

The petition points out no new matter of law or fact overlooked, cites no new decisive authority, and advances no new argument. The petition is therefore denied at petitioner's cost.

Howell and Hickerson, JJ., concur.