**Evie SNOW, Complainant-Appellant,**

**v.**

**H. E. OWENS and wife, Georgia Rhea Owens, Defendants-Appellees.**

Court of Appeals of Tennessee, Middle Section.

June 29, 1973.

Certiorari Denied by Supreme Court Feb. 19, 1974.

McAllen Foutch and Frank Buck, Smithville, for complainant-appellant.

J. L. Thompson, III, Nashville, for defendants-appellees.

## OPINION

TODD, Judge.

The complainant, Evie Snow, has appealed from the Chancellor's decree dismissing her bill against the defendants, H. E. Owens and wife Georgia Rhea Owens, for breach of covenants contained in a certain deed from the complainant to the defendants.

On July 25, 1968, complainant, Evie Snow, executed and delivered to defendants an instrument entitled "Deed subject to life estate." Portions of said deed are as follows:

"FOR AND IN THE CONSIDERATION of the Grantees herein permitting me to live in their home, they to furnish me room and board for the balance of my life time and to help me buy what clothes I may need, they to transport me to doctors as I may need to go, they (the Grantees) to pay for the repairs to the house, to pay the insurance and taxes on the land herein conveyed, and the Grantees, at my death, to pay and give me a *descent* burial, I, EVIE SNOW, have this day bargained and sold and do hereby transfer and convey, subject only to my life estate in said land which is hereby expressly reserved from this conveyance, unto H. E. OWENS and wife GEORGIA RHEA OWENS, their heirs and assigns, the following described tract or parcel of land, same being situated in the 9th Civil District of DeKalb County, Tennessee, and same being bounded and described thus:

(Here follows description)

"TO HAVE AND TO HOLD the said real property hereinabove described, subject only to my life estate in said land which is hereby expressly reserved from this conveyance unto H. E. OWENS AND wife GEORGIA RHEA OWENS, their heirs and assigns, forever.

.     .     .     .     .     .

"The Grantees herein to receive any income derived from rental of the house during my life time. Also, it is made a part of the consideration of this transfer that the Grantees are to have, as of this date, all of the household furnishings now located in the house on the land herein conveyed to be their absolute property, to dispose of as they may see fit."

On May 2, 1969, complainant filed her original bill alleging the delivery and acceptance of said deed. Said bill also alleged that complainant lived in the home of the defendants in Nashville, Tennessee from the date of said deed until December, 1968; that a disagreement arose as a result of which complainant withdrew from defendants' home; and that complainant thereafter resided elsewhere. The bill charged that the defendants had breached

their agreement set out in the deed above and sought a decree for damages and a lien upon the land conveyed in said deed to secure payment of said damages.

The answer of the defendants denied any breach of the agreement and tendered full performance of same. The answer offered in the alternative to permit complainant to occupy the subject premises on condition that she maintain the improvements and pay taxes and insurance thereon.

After an oral hearing, the Chancellor filed a memorandum opinion resolving all issues in favor of defendants. A decree was entered dismissing complainant's bill and denying the relief sought therein, but ordering that complainant be permitted to occupy the subject premises for the remainder of her life, provided that she maintain same in reasonable repair and pay taxes and insurance thereon.

The complainant-appellant has filed seven assignments of error. The first five assignments challenge the finding of the Chancellor that complainant, and not defendants, breached the contract, and his conclusion denying relief. The sixth assignment insists that complainant should have been allowed to rent out, as well as occupy, the subject premises. The seventh assignment insists that the value of her life estate should have been awarded with lien upon the subject property for enforcement.

Complainant insists that:

"This contract (deed), coupled with this limited extrinsic evidence, clearly establishes that this was a conveyance of property, without a forfeiture clause, for future support of the complainant (grantor) by the defendants (grantees), and that this was what was contemplated by the complainant and the defendants in entering into this type of contract."

■ However, defendant points out that the contract (deed), quoted supra, states:

" . . . In . . . consideration of . . . permitting me to live in their home, they to furnish me room and board . . . . "

Defendant insists that the quoted wording, taken together was intended to mean and should be interpreted to mean:

"furnish me room and board in their (grantee's) home (and not elsewhere)."

On the contrary, complainant insists that the expressions, "permitting me to live in their home" and "furnish me room and board" are separate and severable provisions, so that complainant would be (as she insists) entitled to live in defendants" home if she chose to do so, but, if not, to be supported by defendants elsewhere.

Complainant insists that the word, "board," generally means meals, citing Wofford v. Hooper, 149 Tenn. 250, 259 S. W. 549 (1923). In said case, the Supreme Court held that a father who boarded his son while raising a crop of tobacco was entitled to a lien on said crop for said board as part of "supplies, implements and work stock furnished" under the crop lien statute. The Court said:

"It is objected that the term 'board' is used, and that this term covers lodging as well as food. Quite commonly the expression 'board and lodging' is used when both are furnished, and the term 'board' may well be applied in a sense limiting it to food. The term 'board' had its origin in the wooden material used in the construction of a table, or stand. So Webster defines 'board' in the sense now under consideration as, 'what is served on a table as food; stated meals; provisions; entertainment; usually as furnished for pay.' In 8 C.J., p. 1130, the noun 'board' is thus defined: 'That which is served at the board or table; food, especially meals, regularly furnished for pay, sometimes including lodgings, but often, as in table board, day board, excluding lodging.' The term is sometimes extended to include lodging —so Webster defines the verb, 'to obtain meals, or meals and lodgings.' While it

may have this double meaning, the primary meaning of the word 'board' is furnished food, and the presumption therefore is in this case, it not appearing affirmatively that the charge made included lodging, that the charge was for the food furnished." 149 Tenn., pp. 254, 255, 259 S.W.2d p. 551.

It is to be noted that the deed, quoted supra, states, "room and board," which reduces or eliminates the necessity of defining the word, "board."

The brief of complainant further states:

"The deed requires construction as to whether or not the furnishing of room and board for complainant's lifetime is limited to the home of the defendants, or elsewhere, because the contract does not provide as to where this room and board is to be furnished, or require it to be furnished in the home of the defendants, the contract as to place being silent, or at least not clearly designated, but grants permission to the complainant to live in the home of the defendants."

Complainant cites 50 Am.Jur., Support of Persons, § 14, p. 878, wherein the following is found:

"*§ 14.—Place of Performance.*—As a general rule, a person entitled to support under an agreement therefor, or under a trust or testamentary provision for support, is entitled to the support at any place where he may choose to reside, under reasonable limitations which the law impliedly imposes only for the purpose of preventing needless expense. Contracts for support made by and in favor of persons of declining years with children or relatives, upon adequate consideration, must be understood as entitling them to be comfortably situated. They should be allowed reasonable liberty in the choice of their situation and surroundings, and not be compelled to remain under the roof and within the control of parties whose pecuniary interest it is to be relieved of the burden at the earliest moment.

"The general rule that under an obligation to maintain and support another, where no place is specified, the beneficiary may live wherever he chooses, provided he does not cause needless expense, has been said to be subject to exceptions in cases where there is great inadequacy of consideration, or arrangements are made by the family involving the support of some of its members by others, all of whom have been accustomed to live together, or the circumstances of the case and the language of the instrument indicate an intention that support shall be furnished in a particular manner, at a particular place, or by particular persons. . . .

.   .   .   .   .   .

"In instances where the place contemplated for support is specified, there is no difficulty, and in the absence of other grounds for relief in equity, such designation will control. However, that result will follow only if the place of support is clearly designated, for courts are reluctant to force people to live together against their will. An implied provision as to the place of performance is also effective. . . ." 50 Am.Jur., p. 878.

In Goodwin v. Goodwin, 36 Tenn.App. 630, 260 S.W.2d 186 (1953), Mr. and Mrs. S. H. Goodwin conveyed a remainder interest in Mr. Goodwin's farm to Mr. Goodwin's son, O. B., and wife, reciting an agreement to support both conveyors for life. After the death of Mr. S. H. Goodwin, Mrs. Goodwin sought to compel the grantees to support her in the home of her daughter in Kentucky. This Court refused relief and said:

"[1] It is true, as contended by complainant, that she is vested with a life estate in this land. While it belonged exclusively to her husband, their deed, conveying the remainder, reserved a life estate for both of them, and this reservation operated as a conveyance of a life estate to her, which upon her survival of her husband, inured to her sole benefit as life tenant. McRoberts v. Copeland,

85 Tenn. 211, 2 S.W. 33; Spicer v. Kimes, 25 Tenn.App. 247, 253, 156 S.W. 334.

"[2] It is likewise true that complainant, being unable to support herself, is entitled to be supported by the grantees, O. B. Goodwin and wife. But we think she is not entitled to require them to support her at any place she may choose to live. We agree with the Special Chancellor that it was the intention and agreement of the parties that the grantees would furnish such support on the farm by means of operating the farm; that is, they were to borrow the money, fix up the house for the grantors, take charge of the farm, operate it, and thereby obtain the means of supporting the grantors.

"Under circumstances not materially different from those here appearing, it was held in Conner v. Marshall, 58 Tenn. 706, that the grantee was bound to support the grantor so long as the grantor lived with him, but could not be required to support the grantor at any other place he might choose to live, it appearing that the grantee had offered to support him on the land and had not been guilty of any improper treatment or given him any cause to leave.

"[6] We also agree with the Chancellor that complainant should not now be allowed to abandon the family arrangement, take possession of the land, and call on the grantees to support her elsewhere than on the farm.

.    .    .    .    .    .

"[7] It would be unjust and inequitable for her to repudiate this arrangement, keep all the benefits of it, take possession from the grantees, and at the same time call on them to support her wherever she lived.  .  .  ." 36 Tenn.App., pp. 636, 637, 639, 260 S.W.2d, pp. 189–190.

In 101 A.L.R. 1457 is found a comprehensive treatment of the subject under discussion. Some authorities annotated there-

in allow the beneficiary of the trust or contract to select the place of lodging, while others restrict the benefit to a particular situs. Each case turns upon its own particular facts and the wording of the instrument involved.

In said A.L.R. article, at page 1477, is found the following comment:

"The general rule that under an obligation to maintain and support another, where no place is specified, the beneficiary may live wherever he chooses, provided he does not cause needless expense, has been said to be subject to exceptions in cases where there is great inadequacy of consideration, or family arrangements are made involving the support of some of its members by orders, all of whom have been accustomed to live together, or the circumstances of the case and the language of the instrument indicate an intention that support shall be furnished in a particular manner, at a particular place, or by particular persons. In such cases the courts have sometimes taken the view that support can be required only at the place or from the persons indicated, even though that was not made an express requirement of the agreement or instrument." 101 A.L.R., p. 1477

In said A.L.R. article are found two Tennessee cases, Fraser v. Hayes, (Tenn. Ch.App.–1898), 46 S.W. 475 and Block v. Mauck, (Tenn.Ch.App.–1898), 52 S.W. 689. In each case, the beneficiary was allowed support elsewhere under peculiar conditions not obtaining in the present case.

The Chancellor found, and this Court agrees, that, under the verbiage of the present instrument and the circumstances under which it was executed and carried into effect, the parties did not intend or agree that complainant should have the right to leave the home of defendants and require them to support her elsewhere.

Complainant next insists that defendants breached their contract by failing to furnish medical services as agreed. The grounds of this complaint are that, early in

January, 1969, she contracted a cold and told Mrs. Owens she needed to see a doctor; that she was not taken to a doctor by defendants; that, on January 10, she (complainant) left the home of defendants in the company of a relative who obtained medicine for her on January 11 and, on January 15, took her to a doctor who diagnosed her trouble as flu virus and prescribed medication. Defendants deny that complainant requested medical attention.

Whatever the truth of the matter, the charges of complainant in this regard are not of sufficient gravity to justify the termination of her contract or to entitle complainant to separate support. At most, the facts would not entitle complainant to more than reimbursement of expense of "transport to doctors as needed," as provided in the deed, supra. The amount of this expense is not shown.

■ Complainant's next complaint is that defendants mistreated her and made her so uncomfortable in their home as to amount to an eviction. The rehearsal of the details of the basis and development of the breach between the parties would overly burden this opinion. It is sufficient to state that defendants expected complainant to give them joint control of her $5,000 bank account; that complainant denied having such an account; that defendants sought to investigate the existence of such an account and suggested that complainant had intercepted mail addressed to them in this regard. As a result of unfriendly language between the parties on this subject, complainant withdrew from defendants' home.

The evidence has been examined with care and concern. It is evident therefrom that the parties are estranged over the $5,000, and that there is slight likelihood of a reconciliation on this point. This being so, it appears that complainant will continue to be unwilling to live in the home of defendants, and defendants will continue to be offended because complainant has withheld from them the control of the $5,000 which they expected.

This is most unfortunate. It would be to the advantage of all parties to carry out the terms of their contract in unanimity than to eschew their rights in divisive animosity.

In view of § 27–303, T.C.A., this Court does not find that the evidence so preponderates otherwise as to justify a reversal of the finding of the Chancellor in regard to the gravity, fault and effect of the misunderstanding and ill-will between the parties.

As a result, this Court must concur with the Chancellor in his conclusion that complainant is not entitled to a rescission or damages for breach of contract under this record.

This is not to ignore or prejudice the rights of the complainant to have from the defendants all that they agreed to furnish under the instrument above quoted. The complainant will remain entitled to room and board in the home of defendants, clothes, and transport to doctors. The offer of defendants to furnish such must continue throughout the lifetime of complainant; and, at her death, defendants remain liable for her burial expenses.

■ Upon study of the subject instrument, it appears that the agreement of defendants to pay for repairs, insurance and taxes on the prescribed property is *not* conditioned upon their collection of rents from the property, but is as unconditional as are the agreements to help furnish room and board, buy clothes, and transport to doctor, and, as such, is part of the consideration for conveyance of the remainder. Provision for rental income is in a separate part of the instrument and appears to be an additional grant without a separate consideration.

Properly construed, therefore, the agreement of defendants to pay for repairs, insurance and taxes was and is a part of the price they paid for receiving remainder title to the property; and that price must be paid, regardless of whether they (defendants) are fortunate enough to receive any

income from the property, or they are prevented from receiving any income because complainant exercises her rights as life tenant not to rent it.

This construction of the deed will soften somewhat the impact of the Chancellor's decree upon complainant who has impulsively refused to accept the major benefit due her and thereby rendered her bargain improvident.

Complainant insists that the Chancellor should have granted her "equitable relief" under the terms of the deed; but no theory, maxim or rule of equity has been advanced whereby relief could be properly granted.

Complainant insists that the Chancellor should have permitted complainant to rent out the home for her own profit. However, the deed, above quoted, plainly states that defendants shall be entitled to "any income derived from rental . . . ." Complainant fails to point out any ground upon which the Chancellor or this Court would be justified in setting aside the assignment of income to defendants and restoring same to complainant.

■ Complainant further insists that the Chancellor should have decreed to complainant the value of her life estate in the property, measured by the cost of her livelihood for the rest of her life. No authority is cited for such a drastic reformation of the relationship of the parties as created by their voluntary agreement, and no valid theory or ground of such action occurs to this Court.

It is true that complainant by her deed reserved, and complainant now retains, a life estate in the subject property; but such life estate is a most singular and unusual estate. It reserves to complainant a life estate, except that it denies the life tenant any income, the right to income being vested in the remaindermen. On the other hand, the life estate is also unique in that it is enhanced by freedom from the usual duty to pay for repairs, insurance and taxes, which are the obligation of the remaindermen.

If such an estate is a suitable estate to support a suit for partition (which is not now decided), and if a suit for partition should be filed by complainant (which has not been done), then the Court might undertake the intricate task of ascertaining the value of such estate. Such a task is not involved in the present lawsuit.

■ Complainant does not assign as error, but argues that the Chancellor erred in admitting evidence as to prior relations and dealings of the parties. Excluding such evidence leaves ample competent grounds for the conclusions announced herein, hence its admission and possible consideration by the Chancellor was, if error, harmless. Berke v. Chattanooga Bar Assn., 58 Tenn.App. 636, 436 S.W.2d 296 (1968).

■ Complainant does not assign as error, but argues, that the Chancellor should have required defendants to account to complainant for rents collected by them since their alleged breach of contract. The deed vests in the defendants the right to receive the income from the property, and no ground is shown for forfeiture of this right. However, the clear import of the deed is that *only a remainder* interest is conveyed and the life estate is expressly and repeatedly reserved. Complainant, as life tenant, is therefore entitled to exclusive control and management of the property during her lifetime. Harwell v. Harwell, 151 Tenn. 587, 598, 271 S.W. 353 (1925); 31 C.J.S. Estates § 38, pp. 68, 69. The only limitation of the rights of complainant as life tenant is that recited in the deed; i. e., "any income from rental of the house" belongs to defendants. Contrary to the apparent understanding of defendants, it is complainant, and not defendants, who, during her lifetime, has the right to decide who, if anyone, shall occupy the property and on what terms. If *this is an anomalous situation, it is the* product of a deed written at the behest of

all parties, none of whom can now complain of its unusual effect.

In the present state of the record, and under the conclusions of fact and law as reached herein, the complainant is free to:

(a) Live in the home of defendants at defendants' expense at any time she chooses; or

(b) Live in the subject property at her own expense at any time she chooses; or

(c) Live elsewhere at her own expense at any time she chooses; or

(d) Leave the subject premises vacant or utilize same in any proper manner so long as defendants receive any "income derived from rental of the house."

In any event, complainant is entitled to continued benefit of all obligations of defendant under said deed, including help in buying clothing, transportation to doctor, payment of repairs, insurance and taxes on the subject property, and, at her death, payment of burial expenses.

■ Defendants' brief insists that the instrument relied upon by complainant "is not a contract, but is a deed of record." Of course, defendants did not sign the deed, but covenants in a deed become binding upon a grantee who accepts the deed. Hunt v. Curry, 153 Tenn. 11, 282 S.W. 201 (1926); Johnson v. Robinson, 7 Tenn.App. 457 (1928).

The decree of the Chancellor is modified to remove therefrom the requirement for any payment by complainant of any repair, insurance, or tax as a condition to her occupation or control of the subject premises, and to declare the rights of complainant and defendants set out herein.

As modified, the Chancellor's decree is affirmed. The costs of the cause, including costs of this appeal are taxed equally, that is, one-half to complainant and one-half to defendants.

Modified and Affirmed.

SHRIVER, P. J., and PURYEAR, J., concur.

### OPINION ON PETITION TO REHEAR

TODD, Judge.

■ Complainant-appellant has filed a respectful and earnest petition to rehear, the substance of which is that, inasmuch as this Court interpreted the deed to reserve to the grantor all prerogatives of life tenancy except receipt of rent, and inasmuch as complainant could have, but did not, act to defeat defendant's right to rent, then defendants are obligated to pay to complainant the rent which they have collected by the sufferance of complainant.

This Court did not and does not so understand the rights granted and reserved in the deed. Said deed does reserve to complainant a degree of arbitrary control over the receipt of rent by defendants during her lifetime. However, such rent as is paid under the sufferance of complainant belongs to defendants under the terms of the deed.

It is not sufficient for complainant to now say that, if she had been aware of her power to deprive defendants of rent she would have done so. If she had done so, she would have deprived defendants of rent, but would not have entitled herself to one penny of rent. She cannot permit defendants to collect rent to which they were entitled and thereafter obtain from defendants that rent to which she (complainant) can never be entitled under her deed.

There is no evidence of oppression or invasion of complainant's rights by defendants. They did and received what complainant permitted them to do and receive, for which there can be no liability.

Complainant's petition to rehear is respectfully overruled.

SHRIVER, P. J., and PURYEAR, J., concur.